CHARLES J. MOZZOCHI ET AL. *v.* TOWN OF
GLASTONBURY ET AL.

PETERS, PARSKEY, ARMENTANO, SHEA and COVELLO, JS.

Argued June 9—decision released September 7, 1982

*Walter A. Twachtman, Jr.,* with whom, on the brief, was *Mark K. Branse,* for the appellants (plaintiffs).

*Harvey A. Katz,* with whom, on the brief, was *Kristi A. Stapf,* for the appellees (defendants).

COVELLO, J. The plaintiffs are taxpayers, electors and residents of Glastonbury.[1] The complaint alleges that on December 10, 1978, the named plaintiff, Charles J. Mozzochi, began circulation of a petition calling for the appointment of a charter revision commission by the Glastonbury town council.[2] The petition asked that the council direct the commission to take up five specific matters.

On December 10, 1978, prior to completion of the petition procedure, the Glastonbury town council, on its own initiative, appointed a charter revision commission. The council directed the commission to consider twenty-nine separate items including the five matters contained in the plaintiffs' petition.

On June 22, 1979, the charter revision commission submitted its report to the town council as required

---

[1] The named plaintiff is not an elector. However, the issue of his standing was conceded to be moot during oral argument because the remaining plaintiffs, whose standing is not challenged, are entitled to maintain the action.

[2] General Statutes §§ 7-188 through 7-190.

by General Statutes § 7-191. The report commented on all twenty-nine items but recommended favorable action on only some of them. The report did not recommend favorable action on any of the plaintiffs' submissions.

On August 28, 1979, the town council took final action on the commission's report by voting to accept or reject only those items recommended by the commission. The council never voted on the items proposed by the plaintiffs as those items did not receive the favorable recommendation of the charter revision commission.

The gravamen of the claim pursued on appeal is that the town council's failure to accept or reject all twenty-nine items originally submitted to the charter revision commission now bars the plaintiffs from submitting the omitted proposals (including theirs) to the general electorate pursuant to a further petition procedure authorized by statute.[3] The plaintiffs claim that this result is contrary to the legislature's intent.

The town, while agreeing that no referendum procedure is available under these circumstances, argues that there is no requirement for the town council to accept or reject each item originally submitted to the commission and that the referendum procedure is available only for those proposals which are finally recommended by the charter revision commission and thereafter rejected by the town council. We concur.

[3] General Statutes § 7-191 provides in relevant part: "No further action on the *matter so rejected* shall be taken within a year thereafter unless, within forty-five days after a vote of the appointing authority *to reject such matter*, a petition for a referendum thereon, signed by not less than fifteen per cent of the electors . . . is presented to the appointing authority. . . ." (Emphasis added.)

The statutes here in question are all part of the Home Rule Act and furnish a municipality with the means of adopting or amending a municipal charter. General Statutes §§ 7-187 et seq. Well established principles of construction govern their interpretation. First, "[t]he statute[s] must be applied as [their] words direct. *Obuchowski* v. *Dental Commission,* 149 Conn. 257, 265, 178 A.2d 537 [1962]." *Menzies* v. *Fisher,* 165 Conn. 338, 353–54, 334 A.2d 452 (1973) (*House, C. J.,* dissenting). "It is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words; *Lenox Realty Co.* v. *Hackett,* 122 Conn. 143, 150, 187 A. 895 [1936] . . . ." Id., 353.

General Statutes § 7-187 authorizes the creation of a charter revision commission by resolution of an "appointing authority." General Statutes § 7-191 thereafter requires the commission so appointed to hold a minimum of two public hearings and to submit within the prescribed time its report, "including the proposed charter, amendment or amendments . . . to the appointing authority." The appointing authority in turn holds its own public hearing on the proposed amendments and makes its recommendations back to the commission. After a mandatory conference between the appointing authority and the commission, the statute provides for the commission's submission of its final report. "Within fifteen days thereafter, the appointing authority . . . shall either approve the proposed charter, amendment or amendments . . . or reject the same or separate provisions thereof." Ibid.

There is no language which prescribes the content of the commission's initial or final report

except that to the extent the agency makes or submits a "proposed charter, amendment or amendments," such charter or amendments must be included in the report. There simply is no language which directs that all proposals considered must be included in the commission's final report or that the appointing authority must accept or reject all proposals that were submitted for consideration.

The situation here is governed by the proposition that: "The statutory language in question is clear and describes a specifically delineated procedure which admits of no ambiguities. We cannot 'search out some intent which we may believe the legislature actually had and give effect to it . . . we are confined to the intention which is expressed in the words it has used.' *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128 [1948]." *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976), quoting *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410, 311 A.2d 65 (1972).

The plaintiffs also contend that this interpretation renders General Statutes §§ 7-190 and 7-191 unconstitutional because it restricts their access to the ballot box. To support this claim, they rely principally on *Williams* v. *Rhodes,* 393 U.S. 23, 89 S. Ct. 5, 21 L. Ed. 2d 24 (1968). That case is distinguishable, however, because it involved a statute which placed onerous requirements on independent political parties, thus effectively precluding them from getting their candidates on the ballot. It does not support, either directly or by inference, the proposition that the nonavailability of a referendum procedure for one who proposes a charter amendment violates his constitutional rights. Further, the statute in issue places no restrictions on these plaintiffs' rights to have political candidates

of a more sympathetic persuasion placed on the ballot or on their rights to vote for such candidates. Accordingly, we find that the statute is not unconstitutional.

There is no error.

In this opinion the other judges concurred.