COMMISSIONER, DEPARTMENT OF PUBLIC SAFETY *v.*
FREEDOM OF INFORMATION COMMISSION ET AL.
(12927)

PETERS, C. J., SHEA, SANTANIELLO, DUPONT and CURRAN, Js.

Argued February 4—decision released August 4, 1987

*Peter E. Wiese,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Stephen J. O'Neill,* assistant attorney general, for the appellant (plaintiff).

*Ralph G. Elliot,* with whom, on the brief, was *William S. Fish,* for the appellees (defendants the Hartford Courant et al.).

*Constance L. Chambers,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee (named defendant).

SANTANIELLO, J. The dispositive issue in this appeal is the extent to which the public or interested parties have access to exhibits and evidence received by the statewide organized crime investigative task force (SOCITF). The plaintiff has appealed from a judgment of the trial court sustaining the order of the defendant, freedom of information commission (FOIC), directing the plaintiff, the commissioner of the department of public safety (DPS), to provide access to certain state police records maintained by SOCITF and requested by the defendants, the Hartford Courant, and its employees, Roger Moore and Lynne Garnett.

The plaintiff claims that the trial court erred in: (1) concluding from the testimony before the FOIC that the materials sought were not subject to a present investigation or prospective law enforcement action when no such finding was made by the commission; (2) concluding that the materials, which the FOIC had ordered disclosed, were not exempt from disclosure pursuant to the provisions of General Statutes §§ 1-19 (a),

and 29-166 through 29-172 inclusive; and (3) affirming the decision and order of the FOIC and dismissing the appeal. We find error and remand the case with direction to sustain the appeal.

The factual basis for this appeal is as follows. On January 31, 1985, the defendants, the Hartford Courant, Moore and Garnett, made a written request of the plaintiff pursuant to the Freedom of Information Act (FOIA)[1] seeking "[a]ll State Police reports, records and memoranda on any investigations conducted by your department into the conduct of Waterbury Assistant State's Attorney Arthur M. McDonald." The plaintiff did not respond within the time allowed by General Statutes § 1-21i (a),[2] and thus is deemed to have denied the request. Thereafter, on February 5, 1985, the Hartford Courant, Moore and Garnett filed a complaint with the named defendant regarding their request, which was docketed as No. FIC 85-22. A hearing was conducted by FOIC commissioner Robert J. Leeney and on February 8, 1985, Leeney issued a proposed order that required the plaintiff to disclose the public records requested, identified as state police file No. 84-00250-0. On February 13, 1985, the FOIC adopted this pro-

---

[1] The Freedom of Information Act is found in General Statutes §§ 1-15, 1-18a through 1-19b, 1-21, 1-21a and 1-21c through 1-21k. *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 311 n.1, 472 A.2d 321 (1984).

[2] "[General Statutes] Sec. 1-21i. DENIAL OF ACCESS TO PUBLIC RECORDS OR MEETINGS. APPEALS. NOTICE. ORDERS. CIVIL PENALTY. SERVICE OF PROCESS UPON COMMISSION. FRIVOLOUS APPEALS. (a) Any denial of the right to inspect or copy records provided for under section 1-19 shall be made to the person requesting such right by the public agency official who has custody or control of the public record, in writing, within four business days of such request. Failure to comply with a request to so inspect or copy such public record within such four business day period shall be deemed to be a denial."

posed order and made it final.[3] No appeal has been taken from this order.

[3] "FREEDOM OF INFORMATION COMMISSION OF THE STATE OF CONNECTICUT

Report of Hearing Officer
February 8, 1985
Docket #FIC 85-22

In the Matter of a Complaint by
ROGER MOORE, Metropolitan Editor,
The Hartford Courant; LYNNE GARNETT,
Reporter, The Hartford Courant;
and THE HARTFORD COURANT,

Complainants,

against

COMMISSIONER, DEPARTMENT OF PUBLIC SAFETY
OF THE STATE OF CONNECTICUT,

Respondent.

The above captioned matter was heard as a contested case on February 7, 1985, at which time the complainants and the respondent appeared, stipulated as to certain facts, and presented testimony, exhibits and argument on the complaint. Chris Powell, Managing Editor, The Journal Inquirer, sought and was granted leave to intervene in the proceedings of February 7, 1985, and participated fully therein, pursuant to § 1-21j-28 of the Regulations of Connecticut State Agencies.

After consideration of the entire record the following facts are found:

1. The respondent is a public agency within the meaning of § 1-18a (a), G.S.

2. By letter filed with the Commission on February 5, 1985, the complainants alleged that the respondent had denied their request for public records in violation of the Freedom of Information Act.

3. It is found that on January 31, 1985, the complainants made a written request to the respondent for copies of, or access to, 'all State Police reports, records and memoranda on any investigations conducted by your department into the conduct of Waterbury Assistant State's Attorney Arthur M. McDonald.'

4. It is found that the records specified in paragraph 3, above, consist of a State Police file numbered 84-00250-0. The file consists of an investigation of alleged bribe receiving by former Assistant State's Attorney Arthur McDonald. The file includes investigatory reports, documentation of meetings with prosecutors and their staffs, and police reports of observations of conduct of the suspect and statements made by the suspect.

5. The records described in paragraph 4, above, are public records within the meaning of §§ 1-18a (d) and 1-19, G.S.

On February 20, 1985, the Hartford Courant, Moore and Garnett filed a second complaint and appeal with

6. The respondent claims that the subject records are exempt from public disclosure pursuant to § 1-19 (b) (3) (B), G.S.

7. § 1-19 (b) (3) (B), G.S., permits a public agency to withhold from public disclosure:

'records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . information to be used in a prospective law enforcement action *if prejudicial to such action.*' (Emphasis added.)

8. It is found that Judge Martin McKeever is conducting a judicial inquiry into allegations against Arthur McDonald.

9. State's Attorney John J. Kelley, who has been appointed to assist Judge McKeever, represented to the respondent that disclosure of the subject records would not be in the public interest because it would result in the disclosure of information that 'may be used in prospective law enforcement actions' and which would 'have an adverse effect on prospective law enforcement actions.'

10. The respondent relies entirely on State's Attorney Kelley's representation for the assertion of the applicability of the exemption in § 1-19 (b) (3) (B), G.S. The respondent otherwise maintains that the subject records are contained in a closed State Police file to which § 1-19 (b) (3) (B), G.S., does not apply.

11. It is concluded that the respondent failed to prove by competent and credible evidence the applicability of the exemption in § 1-19 (b) (3) (B), G.S.

12. The respondent further claims that it may not disclose the requested records because Judge McKeever has sealed the records of the judicial inquiry into the allegations against Arthur McDonald, pursuant to § 54-47 (c), G.S.

13. § 54-47 (c), G.S., provides that: 'Such [judicial] inquiries shall be conducted in public or private as said court or chief court administrator orders.'

14. It is concluded that § 54-47 (c), G.S., empowers the court to seal court records but does not empower the court to preclude disclosure of State Police records that is otherwise required by the Freedom of Information Act.

15. It is therefore concluded that the respondent has failed to comply with the provisions of §§ 1-15 and 1-19, G.S., by failing to provide the complainants with copies of, or access to, the public records described in paragraph 4, above.

The following order by the Commission is hereby recommended on the basis of the record concerning the above captioned complaint:

the FOIC, pursuant to General Statutes § 1-21i (b),[4] requesting the FOIC to reexamine the original com-

1. the respondent shall forthwith provide the complainants with copies of, or access to, the public record described in paragraph 4, above.

Commissioner Robert J. Leeney
as Hearing Officer

Approved by order of the Freedom of Information Commission at its regular meeting of February 13, 1985.

Mary Jo Jolicoeur
Clerk of the Commission"

[4] "[General Statutes (Rev. to 1985)] Sec. 1-21i. DENIAL OF ACCESS TO PUBLIC RECORDS OR MEETINGS. APPEALS. NOTICE. ORDERS. CIVIL PENALTY. SERVICE OF PROCESS UPON COMMISSION. FRIVOLOUS APPEALS. . . . "(b) Any person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, may appeal therefrom to the freedom of information commission, by filing a notice of appeal with said commission. A notice of appeal shall be filed within thirty days after such denial, except in the case of an unnoticed or secret meeting, in which case the appeal shall be filed within thirty days after the person filing the appeal receives notice in fact that such meeting was held. For purposes of this subsection, such notice of appeal shall be deemed to be filed on the date it is received by said commission or on the date it is postmarked, if received more than thirty days after the date of the denial from which such appeal is taken. Upon receipt of such notice, the commission shall serve upon all parties, by certified or registered mail, a copy of such notice together with any other notice or order of such commission. Said commission shall, within twenty days after receipt of the notice of appeal, hear such appeal after due notice to the parties, and shall decide the appeal within thirty days after such hearing by confirming the action of the agency or ordering the agency to comply forthwith with such relief as the commission, in its sound discretion, believes appropriate to rectify the denial of any right conferred by said sections. If a notice of appeal concerns an announced agency decision to meet in executive session or an ongoing agency practice of meeting in executive sessions, for a stated purpose, the commission or a member or members of the commission designated by its chairperson shall serve notice upon the parties in accordance with this section and hold a preliminary hearing on the appeal within seventy-two hours after receipt of the notice, provided such notice shall be given to the parties at least forty-eight hours prior to such hearing. If after the preliminary hearing the commission finds

plaint in No. FIC 85-22, alleging that certain public records had not been disclosed by the plaintiff in compliance with the original order although those records were within the parameters of that order. In this subsequent complaint, docketed as No. FIC 85-32, the defendants requested copies of or access to "state police documents on [Arthur] McDonald—including but not limited to 1979 files from the Statewide Organized Crime Investigative Task Force. . . ." The plaintiff and its appointee, the director of SOCITF, opposed this action. A hearing was conducted by FOIC commissioner Judith A. Lahey on February 26, 1985, and a final decision was rendered on March 20, 1985. The FOIC found that the records which were sought "consisted of 9 or 10 pages in the files of the Statewide

probable cause to believe that the agency decision or practice is in violation of sections 1-18a and 1-21, the agency shall not meet in executive session for such purpose until the commission decides the appeal. If probable cause is found by the commission, it shall conduct a final hearing on the appeal and render its decision within five days of the completion of the preliminary hearing. Such order may declare any or all actions taken at any meeting to which such person was denied the right to attend null and void and may require the production or copying of any public record. In addition, said commission, upon the finding that a denial of any right created by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, was without reasonable grounds may, in its discretion, impose a civil penalty against the custodian or other official directly responsible for such denial of not less than twenty nor more than one thousand dollars, after such custodian or other official has been given an opportunity to be heard at a hearing conducted in accordance with sections 4-177 to 4-184, inclusive. If the commission finds that a person has taken an appeal to the commission under this subsection frivolously, without reasonable grounds and solely for the purpose of harassing the agency against which the appeal has been taken, it may, in its discretion, impose a civil penalty against such person of not less than twenty dollars nor more than one thousand dollars, after such person has been given an opportunity to be heard at a hearing conducted in accordance with sections 4-177 to 4-184, inclusive. In the case of failure to pay any such penalty levied by the commission pursuant to this subsection, within thirty days of written notice sent by certified or registered mail to such person, the superior court for the judicial district of Hartford-New Britain, on application of the commission, shall issue an order requiring such person to pay the penalty imposed."

Organized Crime Investigative Task Force (SOCITF). The records consist[ed] of data gathered or received in 1979, 1982 and 1985. The records contain[ed] specific allegations about McDonald placing bets, receiving gifts of food and liquor, and fixing criminal cases in return for cash, and items of value." The FOIC finding further stated that "under §§ 29-170 and 29-171 [of the General Statutes], the director of SOCITF may only withhold records the release of which would compromise SOCITF's ability to effectively gather confidential information" and "it is concluded that records not governed by the provisions of §§ 29-170 and 29-171 [of the General Statutes] are subject to the disclosure provisions of § 1-19 [of the General Statutes]." Accordingly, the FOIC ordered the plaintiff to provide the Hartford Courant, Moore and Garnett with access to inspect or copy the requested records. The FOIC also directed that the plaintiff could "mask or otherwise withhold specific information that would identify confidential informants" in order to protect SOCITF's ability to gather confidential information.

The plaintiff then appealed to the Superior Court, pursuant to General Statutes § 1-21i (d)[5] and § 4-183,

---

[5] "[General Statutes] Sec. 1-21i. DENIAL OF ACCESS TO PUBLIC RECORDS OR MEETINGS. APPEALS. NOTICE. ORDERS. CIVIL PENALTY. SERVICE OF PROCESS UPON COMMISSION. FRIVOLOUS APPEALS. . . .

"(d) Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. If aggrievement is a jurisdictional prerequisite to the commission taking any such appeal, the commission shall be deemed to be aggrieved. Notwithstanding the provisions of section 3-125, legal counsel employed or retained by said commission shall represent said commission in all such appeals and in any other litigation affecting said commission. Notwithstanding the provisions of subsection (b) of section 4-183 and section 52-64, all process shall be served upon said commission at its office. Any appeal taken pursuant to this section shall be privileged in respect to its assignment for trial over all other actions except writs of habeas corpus and actions brought by or on behalf

claiming that the FOIC erred in ordering the disclosure of the records that are the subject of the February 20, 1985 complaint. The plaintiff claimed that such an order infringed upon SOCITF's authority to determine the information which may be released pursuant to § 29-170.[6] The plaintiff further argued that the FOIC's conclusion that the director of SOCITF could withhold only records which would compromise SOCITF's ability effectively to gather confidential information contravened General Statutes §§ 1-19 (a), 29-170 and 29-171.

In addressing the plaintiff's claims, the trial court attempted to balance the policy considerations underlying the FOIA. The court first recognized that the FOIA reflects a legislative policy favoring the disclosure of public records, and that any exception to the general rule of disclosure must be narrowly construed. The court also noted that the burden of proving the applicability of an exemption rests upon the agency claiming it. The trial court next determined that General Statutes § 29-171 creates an exception to the disclosure policy of the FOIA, but reasoned that the statute limits disclosure only while SOCITF is " 'conducting or participating in any investigation under [chapter 536 of

of the state, including informations on the relation of private individuals. Nothing in this section shall deprive any party of any rights he may have had at common law prior to January 1, 1958. If the court finds that any appeal taken pursuant to this section or section 4-183 is frivolous or taken solely for the purpose of delay, it shall order the party responsible therefor to pay to the party injured by such frivolous or dilatory appeal costs or attorney's fees of not more than one thousand dollars. Such order shall be in addition to any other remedy or disciplinary action required or permitted by statute or by rules of court."

[6] "[General Statutes] Sec. 29-170. PUBLICATION OF INFORMATION RELATIVE TO ORGANIZED CRIME. In order to keep the public informed as the operations of organized crime and the problems encountered by the state in dealing with organized crime, the state-wide organized crime investigative task force may disseminate such information by such means and to such extent as it deems appropriate."

the General Statutes].' '' Reasoning that the FOIC could have found that SOCITF was not at that time conducting an investigation,[7] the court concluded that the evidence supported the FOIC's decision and that the FOIC did not act illegally, arbitrarily or in abuse of its discretion. Therefore, the court dismissed the plaintiff's action.

The plaintiff appealed to the Appellate Court, claiming, inter alia, that the trial court erred in concluding the records that the FOIC ordered disclosed were not exempt from disclosure pursuant to General Statutes §§ 1-19 (a), and 29-166 through 29-172. The appeal was transferred to this court pursuant to Practice Book § 4023.

The resolution of the plaintiff's claim requires the reconciliation of two statutes, each dealing with the disclosure of information. General Statutes § 1-19 (a) states that "[e]xcept as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records . . . ."[8] Section 29-170, by contrast, sets

---

[7] At the time relevant to this action there was no investigation being pursued. McDonald had been convicted and sentenced, and under normal circumstances the file would have been "purged" but for this particular action.

[8] "[General Statutes] Sec. 1-19. ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located

forth that "[i]n order to keep the public informed as to the operations of organized crime and the problems encountered by the state in dealing with organized crime, the state-wide organized crime investigative task force may disseminate such information by such means and to such extent as it deems necessary."

The plaintiff contends that § 29-170 gives SOCITF the authority to disseminate information as it deems necessary to keep the public informed, and as such, the statute comes within the "[e]xcept as otherwise provided" exception to § 1-19 (a). Therefore, the plaintiff argues that any records maintained by SOCITF fall outside the disclosure requirements of the FOIA.

The defendants, on the other hand, argue that § 29-170 does not exclude records possessed by SOCITF from the disclosure requirements of § 1-19 (a). They argue that § 29-170 is not a "non-disclosure" statute limiting the dissemination of information as SOCITF sees fit, but rather an "empowering" statute, authorizing and encouraging SOCITF to disclose information beyond that which must be disclosed under § 1-19 (a).

The disposition of this case thus turns on whether the legislature, in enacting General Statutes § 29-170, intended to exclude information gathered by SOCITF from the disclosure requirements of § 1-19 (a), or merely intended to encourage SOCITF to disclose additional information beyond that required by the FOIA. See *Galvin* v. *Freedom of Information Commission,* 201 Conn. 448, 456, 518 A.2d 64 (1986). In resolving this issue, we are guided by the well established rule that requires us to ascertain and give effect to the appar-

or of the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings."

ent intent of the legislature. See, e.g., *State* v. *Dolphin,* 203 Conn. 506, 521, 525 A.2d 509 (1987); *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.05. When the language of a statute is plain and unambiguous, we need look no further for interpretive guidance because it is assumed that the language itself reflects the legislative intent. *Rhodes* v. *Hartford,* supra; *Johnson* v. *Manson* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986). "It has often been said that the legislative intent is to be found not in what the legislature meant to say, but in the meaning of what it did say." *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980); see also *Hayes* v. *Smith,* 194 Conn. 52, 57–58, 480 A.2d 425 (1984); *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 231, 477 A.2d 988 (1984). "Where statutory language is clearly expressed . . . courts must apply the legislative enactment according to the plain terms and 'cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result.' *Rosnick* v. *Aetna Casualty & Surety Co.,* 172 Conn. 416, 422, 374 A.2d 1076 (1977), quoting *State* v. *Malm,* 143 Conn. 462, 467, 123 A.2d 276 (1956)." *Johnson* v. *Manson,* supra, 315; see also *State* v. *Whiteman,* 204 Conn. 98, 103, 526 A.2d 869 (1987), quoting *Mozzochi* v. *Glastonbury,* 188 Conn. 276, 279, 449 A.2d 173 (1982). A statute does not become ambiguous solely because the parties disagree as to its meaning. *Harris Data Communications, Inc.* v. *Heffernan,* 183 Conn. 194, 198, 438 A.2d 1178 (1981); *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 508, 363 A.2d 1055 (1975).

In the present case, we conclude that the language of § 29-170 clearly indicates that the legislature intended to limit the disclosure of information gathered by SOCITF. Section 29-170 clearly provides that "the state-wide organized crime investigative task force *may disseminate such information by such means and to such extent as it deems appropriate.*" (Emphasis added.) The language plainly reflects a policy of conditional rather than unfettered disclosure.[9] Accord *Galvin* v. *Freedom of Information Commission,* supra, 459.

Moreover, it is presumed that the legislature, in enacting a statute, acts with the knowledge of existing relative statutes and with the intention of creating one consistent body of law. *Caulkins* v. *Petrillo,* 200 Conn. 713, 718, 513 A.2d 43 (1986); *Milford* v. *Local 1566,* 200 Conn. 91, 100, 510 A.2d 177 (1986); *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984). Therefore, we assume that the General Assembly, in enacting § 29-170, was mindful of the provision of § 1-19 (a) which states that "[e]xcept *as otherwise provided by . . . state statute,* all records . . . shall be public records and every person shall have the right to inspect such records . . . ."[10] (Emphasis added.) By giving

---

[9] The legislative policy of limited disclosure is further reflected in General Statutes § 29-171 which imposes criminal sanctions for the unauthorized disclosure of information possessed by SOCITF. Section 29-171 provides: "ILLEGAL DISCLOSURE OF INFORMATION; CLASS A MISDEMEANOR. Any person conducting or participating in any investigation under this chapter who discloses to any person other than the director or a member of the state-wide organized crime investigative task force or the advisory committee the name of any informant or any information obtained or given upon any investigation, except as directed by the director of the state-wide organized crime investigative task force, shall be guilty of a class A misdemeanor."

[10] The FOIC, in its brief, argues that the General Assembly adopted the FOIA two years after SOCITF was created and that the FOIA expresses a strong legislative policy of access to public records. Thus, the FOIC contends that General Statutes § 29-170 should not be read to allow SOCITF to withhold records from the public. The mainstay provision of the FOIA, General Statutes § 1-19 (a), however, was enacted in 1957 as Public Acts

SOCITF authority to disseminate information as it deemed appropriate, the legislature "otherwise provided by state statute" an exception to the disclosure requirements of § 1-19 (a).

Additionally, we note that SOCITF is a specially organized agency whose function is to gather information and conduct investigations into a number of diversified areas. See General Statutes §§ 29-167, 29-169.[11]

1957, No. 428. General Statutes §§ 29-167 through 29-172, on the other hand, were enacted in 1973 as part of Public Acts 1973, No. 73-592. While we recognize that subsequent to the passage of § 29-170, the legislature amended § 1-19 (a) and narrowed the exceptions to the disclosure requirements; see, e.g., Public Acts 1975, No. 75-342, § 2 (a); Public Acts 1984, No. 84-112, § 1; none of the amendments changed the statute with respect to the "otherwise provided for by state statute" exception. We therefore find the FOIC's argument without merit.

[11] "[General Statutes] Sec. 29-167. INVESTIGATIONS BY TASK FORCE. The state-wide organized crime investigative task force shall have the duty and power to conduct and coordinate investigations in connection with: (1) The faithful execution and effective enforcement of the laws of the state, with particular reference to those laws controlling organized crime and racketeering; (2) the conduct of public officers and public employees, and of officers and employees of public corporations and authorities; and (3) any matter concerning the public peace, public safety and public justice. With respect to the performance of its functions, duties and powers, the state-wide organized crime investigative task force shall be authorized to conduct any investigation authorized by this section at any place within the state and to function at any place within the state as it may deem necessary."

"[General Statutes] Sec. 29-169. COOPERATION WITH TASK FORCE BY GOVERNMENTAL UNITS. AGREEMENTS WITH OTHER STATES. COOPERATION WITH FEDERAL AUTHORITIES. REFERRAL OF EVIDENCE OF CRIME OR MISCONDUCT. (a) The state-wide organized crime investigative task force may duly request and may receive from every department, division, board, bureau, commission or other agency of the state, or of any political subdivision thereof, cooperation and assistance in the performance of its duties, including the temporary assignment of personnel to the state-wide organized crime investigative task force which might be necessary in order to carry out its duties and responsibilities.

"(b) The state-wide organized crime investigative task force may enter into mutual assistance and cooperation agreements with other states pertaining to those law enforcement matters extending across the boundaries

Information may be gathered from confidential sources, and may include hearsay and unsubstantiated assertions. The legislature might reasonably have considered this information to be sufficiently sensitive to warrant the imposition of disclosure restrictions not applicable to the records of other public agencies. Accord *Galvin* v. *Freedom of Information Commission,* supra, 461. We therefore hold that information possessed by SOCITF is not accessible to the general public pursuant to the FOIA. Accordingly, the trial court erred in dismissing the plaintiff's appeal, and upholding the FOIC's decision that the requested records were "subject to the disclosure provisions of § 1-19 G.S."

Our conclusion that SOCITF does not fall within § 1-19 disposes of the administrative appeal, since records which are not governed by the FOIA do not fall within the jurisdiction of the FOIC. The defendants have, however, raised important issues of policy regarding the proper construction of § 29-170. They ask us to determine whether the discretion that § 29-170 confers upon SOCITF is absolute or limited. The plaintiff apparently contends that it has absolute and unbridled authority to withhold or disseminate information as it sees fit. We do not read § 29-170 so broadly.

Section 29-170 states that information is to be disseminated "[i]n order to keep the public informed as to the operations of organized crime and the problems encountered by the state in dealing with organized

of the state into other states; and may consult and exchange information with officers and agencies of other states with respect to law enforcement problems of mutual concern.

"(c) The task force shall cooperate with departments and officers of the United States government in the investigation of violations of the federal laws within this state.

"(d) Whenever it appears to the director of the state-wide organized crime investigative task force that there is cause for prosecution for a crime, or for the removal of a public officer for misconduct, he shall refer the evidence of such crime or misconduct to the chief state's attorney."

crime . . . ." Additionally, in discussing Public Acts 1973, No. 73-592, the bill creating SOCITF, Representative Samuel S. Freedman stated: "Finally sir, and this is most important. It is provided that where ever possible the people . . . of the state be given information relative to the status of organized crime in the state." 16 H.R. Proc., Pt. 14, 1973 Sess., pp. 7252-53. Implicit in § 29-170, then, is that SOCITF may not capriciously or arbitrarily withhold information. This understanding, however, does not clarify under what circumstances SOCITF may withhold disclosure of such information.

To help us determine the appropriate standard of discretion conferred upon SOCITF, we find our recent case of *In re Final Grand Jury Report Concerning the Torrington Police Department,* 197 Conn. 698, 501 A.2d 377 (1985), to be cogent. In that case, we addressed the standard of discretion conferred by General Statutes (Rev. to 1985) § 54-47 (g) upon the trial court to release an investigative grand jury transcript and report.[12] Section 54-47 (g) provided in part that after an investigatory grand jury inquiry, a report and transcript be filed with the court, and that "the court shall direct whether, and to what extent, the report [and transcript] shall be made available to the public or interested parties."

In determining the extent of discretion conferred upon the court in directing "whether, and to what extent," the report and transcript should be made available, we first noted that there were no explicit statutory guidelines resolving the issue. Id., 706. We then examined the history of the grand jury system to help ascertain "the appropriate measure of the discretionary process that the statute envisages." Id., 707. In

---

[12] General Statutes § 54-47 subsequently was repealed by Public Acts 1985, No. 85-611, § 9.

examining the system's history, we recognized the importance of secrecy in the proper exercise of an investigatory grand jury's duties. Id. We reasoned that "[s]afeguarding the confidentiality of grand jury proceedings serves a number of functions. 'First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.' *Douglas Oil Co.* v. *Petrol Stops Northwest,* [441 U.S. 211, 219, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979)]." *In re Final Grand Jury Report Concerning the Torrington Police Deptartment,* supra, 709–10.

We concluded that the "particularized need" standard, first developed by the federal courts in response to the recognized need for secrecy in the indicting grand jury system, was an appropriate measure of the discretionary authority conferred upon the court by § 54-47 (g). Id., 709, 712. We stated that such a standard requires balancing the competing interests of disclosure and secrecy by examining all the facts of a particular case, including the possible effect upon the functioning of future grand juries. Id., 711–12; see also *United States* v. *Sells Engineering, Inc.,* 463 U.S. 418, 442–43, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983); *Douglas Oil Co.,* v. *Petrol Stops Northwest,* supra, 218–22. Accordingly, we held that parties seeking disclosure of investigatory grand jury transcripts or records must bear the bur-

den of articulating and substantiating a basis for the information. *In re Final Grand Jury Report Concerning the Torrington Police Deptartment,* supra, 712–13.

We conclude that both SOCITF's function and the means for performing its duties are analogous to the investigatory grand jury so as to warrant the adoption of the "particularized need" standard as the appropriate measure of discretion conferred upon SOCITF by General Statutes § 29-170. "The function of the investigatory grand jury is to conduct an inquiry into criminal activity and to report its findings to the court. *State* v. *Moynahan,* 164 Conn. 560, 564–65, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973)." *In re Final Grand Jury Report Concerning the Torrington Police Deptartment,* supra, 707; see also *In re Investigation of the Grand Juror,* 188 Conn. 601, 605, 452 A.2d 935 (1982). Similarly, SOCITF has the duty and power to conduct "investigations in connection with: (1) The faithful execution and effective enforcement of the laws of the state, with particular reference to those laws controlling organized crime and racketeering; (2) the conduct of public officers and public employees, and of officers and employees of public corporations and authorities; and (3) any matter concerning the public peace, public safety and public justice." General Statutes § 29-167. When, during the course of an investigation, it appears that there is cause for the prosecution of a crime, or for the removal of a public officer for misconduct, the director of SOCITF must refer the evidence to the chief state's attorney. General Statutes § 29-169.

The need for secrecy, moreover, is no less important to SOCITF than it is to the investigative grand jury. Information for a SOCITF investigation is gathered from numerous sources, including confidential informants, other investigations, both closed and ongoing, and unsolicited tips. As in the case of investigative

grand jury inquiries, if SOCITF files and records were made public, prospective witnesses and informants would be hesitant to come forward and volunteer information. As Sergeant Bruce Haines, former acting director of SOCITF, stated: "Well, SOCITF has never had to release any intelligence files. The first ones that were released were those subpoenaed on the . . . those were the first ones that were ever made public. Since then, informant information I feel has dried up to some extent. I think it definitely interferes with the collection of data in criminal cases because informants now feel what they once thought sacred and would never be brought to the surface are now worried that their names are going to . . . appear in headlines the next day . . . ." Although an informant's name might be deleted to protect an informant, there might still be information that could only be attributable to one source thereby placing that informant in jeopardy regardless of the protective measures taken.

Furthermore, because the information gathered sometimes rests upon unfounded allegations and casual statements, the secrecy of the investigation assures that persons who are accused but eventually exonerated will not be held up to public ridicule. An "important reason for prohibiting access to police and investigative reports arises from recognition of the rights of privacy of individuals mentioned or accused of wrongdoing in unverified or unverifiable hearsay statements of others included in such reports." *News & Observer Publishing Co.* v. *North Carolina,* 312 N.C. 276, 283, 322 S.E.2d 133 (1984); *In re Investigation by Attorney General,* 30 N.C. App. 585, 588–89, 227 S.E.2d 645 (1976); cf. *Houston Chronicle Publishing Co.* v. *Houston,* 531 S.W.2d 177, 188 (Tex. Civ. App. 1975).

Additionally, because information is interwoven and may pertain to several files or ongoing investigations, the fact that one investigation has been completed does

not vitiate the need for secrecy. As we stated in *In re Final Grand Jury Report Concerning the Torrington Police Deptartment,* supra, 711, "[c]oncern for possible adverse consequences in the future has meant that 'the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.' [*Douglas Oil Co.* v. *Petrol Stops Northwest,* supra, 222]; *Dennis* v. *United States,* [384 U.S. 855, 870, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966)]; *United States* v. *Moten,* 582 F.2d 654, 663 (2d Cir. 1978); 1 LaFave & Israel, [Criminal Procedure (1984)] § 8.5 (g)."

The legislature, by creating SOCITF, created an agency that must rely on extremely sensitive and highly confidential information to perform its function properly. There is an ongoing need to protect sources and information. Therefore, parties seeking SOCITF materials must make a showing of a particularized need for disclosure, and the courts must examine all the facts of a particular case in balancing the interests for disclosure against the need for continued secrecy. In considering the effects of disclosure of SOCITF materials, the courts must consider not only the immediate effects upon the release of particular materials, but also the possible effect upon future investigations. Once an investigation has been completed, concern for future adverse consequences on the operation of SOCITF may be diminished, but not, as a matter of law, eliminated.

Accordingly, we conclude that there must be a balancing procedure whereby the party seeking disclosure must prove a particularized need that outweighs the need for secrecy.

There is error, the judgment is set aside and the matter is remanded with direction to sustain the appeal.

In this opinion PETERS, C. J., DUPONT and CURRAN, Js., concurred.

SHEA, J., concurring. I agree with the dispositive portion of the majority opinion holding that "information possessed by SOCITF is not accessible to the general public pursuant to the Freedom of Information Act" and directing the trial court to sustain the appeal of the commissioner of the department of public safety. I see no reason, however, to go beyond the determination of those issues necessary to the disposition of the appeal, as the majority opinion does in discussing the "particularized need" standard for disclosure of information that the legislature has declared to be unavailable unless released by SOCITF.

This court does not ordinarily render advisory opinions. *Pellegrino* v. *O'Neill,* 193 Conn. 670, 683, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984); *Reply of the Judges,* 33 Conn. 586 (1867). This appeal is a singularly inappropriate occasion for deviating from that salutary policy, because none of the parties before the court has raised or could raise a claim of "particularized need." The defendant newspaper and its reporters assert no special need or right to receive the information sought that elevates their request to SOCITF above that of any member of the general public. No provision of the Freedom of Information Act gives the news media access to information that may be kept from the general public. Furthermore, the jurisdiction of the FOIC to order disclosure is limited to "public records and every person shall have the right to inspect such records." General Statutes § 1-19 (a).

I would await a case where one of the parties has properly claimed a special need for information from SOCITF different from that of the general public before attempting to formulate principles to govern the disclosure of such information.