PERSONNEL DIRECTOR, DEPARTMENT OF INCOME
MAINTENANCE *v.* FREEDOM OF INFORMATION
COMMISSION ET AL.
(13757)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 11—decision released March 27, 1990

*Victor R. Perpetua,* commission counsel, for the appellant (named defendant).

*Arnold B. Feigin,* assistant attorney general, with whom were *Arnold I. Menchel,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* attorney general, for the appellee (plaintiff).

GLASS, J., This is an appeal by the defendant freedom of information commission (FOIC) from a judgment sustaining an appeal by the plaintiff, the personnel director of the department of income maintenance (director), from a decision of the FOIC. We find no error.

The facts are essentially undisputed. Daniel Sorensen, the complainant, who was an employee of the department of income maintenance (DIM), together with twenty-nine other persons, took a merit examination for the position of program supervisor within the DIM. Sorensen was unsuccessful in obtaining the position, and because he was concerned that he had been denied fair and impartial consideration for the position, requested, by a letter[1] dated March 25, 1987, that the director provide him with copies of all instructional material and criteria used by the grading panel to evaluate material submitted by the applicants, all material submitted by the applicants, and the official personnel records of each applicant. Sorensen later modified his request to include only the most recent evaluation of each applicant contained in their respective personnel files. The director notified Sorensen that she was sending him copies of the following documents:

"Job Specification—Program Supervisor

"Position Analysis—Merit Promotion Plan (MPS-2)

"Promotional Announcement—Merit Promotion Plan (MPS-21A)

"Program Supervisor—(Public Assistance) Factors and Rating Criteria

"Rating Conversion Guidelines

[1] Daniel J. Sorensen, by letter dated March 25, 1987, requested that the director provide him with the following:

"(1) Copies of all instructional material and criteria used by the panel in grading the test material submitted by the applicants to test # 152-5467.

"(2) Copies of all test material submitted by all applicants to test # 152-5467.

"(3) Copies of material used by the panel in grading the material submitted by the applicants to test # 152-5467.

"(4) Copies of all the official personnel records of all applicants to test # 152-5467."

"Examination Certification List—Merit Promotion Plan (MPS-4)

"Rate Participants (MPS-5)."

In addition, the director sent Sorensen a copy of his complete examination package. At the hearing on the complaint conducted by FOIC commissioner E. Bartlett Barnes, Sorensen acknowledged that he had received all of these documents. Therefore, at the time of the FOIC hearing, the only requested records at issue were the personnel records of the other applicants. As a result of the hearing, the commissioner issued a report that was subsequently adopted by the FOIC as its final decision.

In that decision, the FOIC found that General Statutes § 5-225[2] does not explicitly or implicitly prohibit the public from exercising its rights under the Freedom of Information Act (FOIA) to request copies of a candidate's papers, markings and other such documents. The FOIC also found that an agency cannot by regulation supersede the mandate of the disclosure provisions of the FOIA, and, therefore, § 5-225-1[3] of the

[2] "[General Statutes] Sec. 5-225. NOTICES OF RATINGS ON EXAMINATIONS. CANDIDATE'S RIGHT OF INSPECTION. All persons competing in any test shall be given written notice of their final earned ratings and except in the case of an examination administered in accordance with the provisions of subsection (b) of section 5-216, shall be given written notice of their relative standing upon the eligible lists or of their failure to attain a place upon such lists. The papers, markings and other items used in determining the final earned ratings, other than the questions and other materials constituting the test itself, shall be open to inspection by the candidate, subject to such regulations as may be issued by the commissioner of administrative services."

[3] Section 5-225-1 of the Regulations of Connecticut State Agencies provides: "EXAMINATION RESULTS; REVIEW OF PAPERS

"(a) An applicant will be notified of the results of his examination as soon as practicable following promulgation of the employment list or following grading of the phase of the examination which he did not pass.

"(b) The application and answer papers of an applicant shall be open to his inspection for sixty days following promulgation of the employment list,

Regulations of Connecticut State Agencies can exempt the examination materials only to the extent that that regulation does not conflict with §§ 1-15 and 1-19 (a)[4]

or for the sixty days following notification that he did not pass a phase of the examination provided that

"(1) The applicant requests an appointment in advance to inspect his papers and presents his 'Results of Examination(s)' slip at the time of appointment;

"(2) The applicant inspecting his answer papers shall limit such inspection to a length of time which the Commissioner of Administrative Services or his designated representative shall prescribe as reasonable; and

"(3) The applicant shall not copy any material provided to him for his inspection.

"(c) When an applicant questions the accuracy of his score on a phase or phases of an examination, he may file a written request for review by the Commissioner of Administrative Services provided that such request is filed no later than ten days after the applicant has inspected his examination results.

"(d) The applicant's request shall state the area or areas with which he disagrees or wherein the results of the examination are allegedly incorrect and shall set forth his arguments, citing the reasons, or the authority where applicable, supporting his point of view.

"(e) The Commissioner of Administrative Services or his representative shall make a final determination of the scoring within 21 days of the receipt of the request for review."

[4] "[General Statutes] Sec. 1-15. APPLICATION FOR COPIES OF PUBLIC RECORDS. CERTIFIED COPIES. FEES. Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. The fee for any copy provided in accordance with this section and sections 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall not exceed twenty-five cents per page. If any copy provided in accordance with said sections requires a printout or transcription, or if any person applies for a printout or transcription of a public record, the fee for such printout or transcription shall not exceed the cost thereof to the public agency. A public agency may require the prepayment of any fee required or permitted under this chapter if such fee is estimated to be ten dollars or more. The sales tax provided in chapter 219 shall not be imposed upon any transaction for which a fee is required or permissible under this section or section 1-21c. The public agency shall waive any fee provided for in this section when (1) the person requesting the records is an indigent individual, (2) the records located are determined by the public agency to be exempt from disclosure under subsection (b) of section 1-19, or (3) in its judgment, compliance with the applicant's request benefits the general welfare. Except as otherwise provided by law, the fee for any person who has the custody of any public records or files for certifying any copy of such records or files,

of the General Statutes. The FOIC found further that the records compiled by the director as part of the program supervisor merit promotional examination were recorded data used to determine promotions of state employees, and that those records were public records as defined in General Statutes § 1-18a (d).[5] In addition, the FOIC found that each merit promotion examination file contained an evaluation of the candidate's job experience, performance appraisals, educational history, previous employment, salary history, training, ratings supplied by an evaluator and a personality assessment of the candidate.

or certifying to any fact appearing therefrom, shall be for the first page of such certificate, or copy and certificate, one dollar; and for each additional page, fifty cents. For the purpose of computing such fee, such copy and certificate shall be deemed to be one continuous instrument."

"[General Statutes] Sec. 1-19. ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings."

[5] General Statutes § 1-18a (d) provides in pertinent part: " 'Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

The FOIC ordered the director to release to Sorensen the applications and evaluations of the other twenty-nine applicants for the position of program supervisor, deleting all references to medical information regarding each applicant or member of the applicant's family. The practical effect of the FOIC's order was to compel the director to release to Sorensen each of the twenty-nine applicants' personnel files. The director appealed the FOIC's order to the Superior Court, which held that the information contained in the requested personnel files fell within the exemption from disclosure provided by General Statutes § 1-19 (b) (2).[6] The director's appeal was, therefore, sustained. The FOIC appealed to the Appellate Court claiming: (1) that the trial court had exceeded the scope of its review in determining the applicability of General Statutes § 1-19 (b) (2) to the records at issue; and (2) that the trial court had erred in concluding that General Statutes §§ 5-225 and 5-237[7] condition the public's right of access to records in the custody of DIM. This court, pursuant to Practice Book § 4023, transferred the appeal to itself.

---

[6] General Statutes § 1-19 (b) (2) provides: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy."

[7] "[General Statutes] Sec. 5-237. SERVICE STANDARDS AND RATINGS. (a) The commissioner of administrative services shall issue regulations for the administration of such service rating system as he or she shall deem practicable. Such service ratings shall be used in determining salary and wage increases and decreases within the limits provided by statute and within the limits of the schedules of compensation, as a means of discovering employees in the classified service who, by reason of their unsatisfactory service, ought to be demoted or dismissed. Reports of service ratings or of information to be used as a basis for service ratings shall not be required for any employee or group of employees oftener than once in three months without the consent of the appointing authorities. Any employee in the classified service shall have the right, at reasonable times during office hours,

We will consider the claims of the FOIC in the reverse order of that stated above. Accordingly, we first consider the FOIC's claim that the trial court erred in concluding that General Statutes §§ 5-225 and 5-237 condition the public's right of access to personnel records in the custody of DIM. The FOIC argues that the subject records constitute public records that are not exempt from disclosure under General Statutes § 1-19 (a) by virtue of §§ 5-225 and 5-237. Section 1-19 (a) provides in pertinent part that "[e]xcept as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records . . . ."

The FOIC argues that §§ 5-225 and 5-237 "do not provide a bar to the disclosure of the subject records, and that the plaintiff [director] failed to prove that any information ordered disclosed is statutorily exempt from disclosure." The director argues that §§ 5-225 and 5-237 are state statutes that trigger the application of the "[e]xcept as otherwise provided by . . . state statute" exception to § 1-19 (a), and therefore, the requested personnel files of applicants other than Sorensen fall outside the ambit of public records. Although the FOIC concedes that the two statutes

to inspect his service ratings, as shown by the records of the department of administrative services or of the department, agency or institution in which such employee is employed.

"(b) Notwithstanding the provisions of subsection (a) of this section, the director of personnel and labor relations shall provide for the administration of a performance appraisal system as he or she shall deem practical for employees whose positions have been designated as managerial, except in the legislative and judicial departments. Such performance appraisals shall be used in determining managerial compensation in accordance with the provisions of subsection (d) of section 5-210, and shall be required periodically as determined by the director of personnel and labor relations."

See footnote 2, supra, for General Statutes § 5-225.

guarantee the rights of state employees to inspect promotional examination materials and service ratings, nonetheless, the FOIC argues that these two statutes do not condition in any way the public's right of access to these same records.

Section § 5-237 provides classified service employees access to their "service ratings" at reasonable times during office hours. Section § 5-225, in pertinent part, unambiguously provides that "[t]he papers, markings and other items used in determining the final earned ratings, other than the questions and other materials constituting the test itself, *shall be open to inspection by the candidate,* subject to such regulations as may be issued by the commissioner of administrative services." (Emphasis added.) The FOIC concedes that both §§ 5-225 and 5-237 are clear and unambiguous and, therefore, are not subject to statutory construction. "When the language of a statute is plain and unambiguous, we need look no further for interpretive guidance because it is assumed that the language itself reflects the legislative intent. *Rhodes* v. *Hartford,* [201 Conn. 89, 513 A.2d 124 (1986)]; *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986)." *Commissioner* v. *Freedom of Information Commission,* 204 Conn. 609, 620, 529 A.2d 692 (1987).

Thus, we are persuaded that the disclosure and inspection referred to under § 5-225 applies only to the candidate who has taken the examination. Otherwise, § 5-225 would be superfluous and useless legislation, since the public, including state employees, would be entitled to disclosure of a candidate's promotional examination records under § 1-19 (a). Equally persuasive is the regulation, § 5-225-1, which clarifies § 5-225.

Section 5-225-1 of the regulations contains such references as: the "applicant" who has taken the examination; "he did not pass"; "inspect his papers"; "his '[r]esults of [e]xamination(s)' "; "his examination results"; "he disagrees"; and "his point of view." All of these pronouns refer only to the person who has taken the examination.

In conclusion, § 1-19 (a) provides that all records kept on file by public agencies shall be public records "[e]xcept as otherwise provided by any federal law or state statute." We hold that §§ 5-225 and 5-237 provide such an exception for the requested personnel files, which contained the promotional examination records of candidates for program supervisor other than the candidate's own records.

Because of our determination that §§ 5-225 and 5-237 are statutory exceptions within the purview of § 1-19 (a), it is unnecessary to consider the FOIC's claim that the trial court exceeded the scope of its review in determining the applicability of § 1-19 (b) (2) and the balancing test between disclosure and the invasion of privacy regarding the records at issue in this case.

There is no error.

In this opinion the other justices concurred.