STATE OF CONNECTICUT *v.* ROBERT J. BRETON, SR.
(13677)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO,
HULL and SANTANIELLO, Js.

Argued June 6—decision released July 25, 1989

*Steven M. Sellers,* assistant state's attorney, with whom were *John A. Connelly,* state's attorney, and, on the brief, *John J. Kelly,* chief state's attorney, and *Karen Diebolt,* assistant state's attorney, for the appellant (state).

*G. Douglas Nash,* public defender, with whom, on the brief, was *Richard Kelly,* assistant public defender, for the appellee (defendant).

*David S. Golub* and *Deborah Fins* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., et al. as amici curiae.

PETERS, C. J. The sole issue in this appeal is whether the aggravating factor "especially cruel," contained in this state's death penalty statute, General Statutes § 53a-46a (h) (4), is unconstitutionally vague. The trial court granted the defendant's motion to dismiss the state's alleged aggravating factor and we then granted the state's motion for an expedited appeal pursuant to General Statutes § 52-265a. We remand the case to the trial court with direction to proceed with the capital sentencing hearing.

By substitute information the state charged the defendant with two counts of murder, pursuant to General Statutes § 53a-54a (a), and one count of capital felony, pursuant to General Statutes § 53a-54b (8).[1] Before trial and in response to the defendant's motion for written notice of any aggravating factors, the state alleged that the defendant had committed the offense "in an especially cruel manner,"[2] and therefore should

---

[1] General Statutes § 53a-54b provides in pertinent part: "A person is guilty of a capital felony who is convicted of any of the following . . . (8) murder of two or more persons at the same time or in the course of a single transaction."

[2] The state originally alleged that the defendant had committed the offense "in an especially heinous, cruel or depraved manner," but amended its notice to allege only that he had committed the offense "in an especially cruel manner."

be sentenced to death if convicted of the predicate capital felony. The defendant moved the trial court to dismiss the aggravating factor, claiming that its vagueness violated our federal and state constitutions.

The trial court granted the defendant's motion to dismiss, holding that the term "especially cruel" was facially vague and overbroad in violation of the federal constitution. U.S. Const., amends. VIII and XIV. While the trial proceeded on the murder and capital felony charges, the state sought and received permission to file an expedited appeal to this court. General Statutes § 52-265a. Thereafter a jury returned guilty verdicts on all three counts of the information.

On appeal, the state urges us to remand the case to the trial court for further proceedings leading to the defendant's sentencing. The state suggests one of two possible courses of action: (1) to order the trial court to devise an appropriate limiting construction of the term "especially cruel"; or (2) to adopt a limiting construction ourselves to guide the trial court. The defendant, on the other hand, argues that the trial court correctly dismissed the aggravating factor because the legislature, which defines criminal conduct in this state, should by statute undertake the task of limiting the definition of the term "especially cruel" to meet constitutional standards.

Our death penalty statute, General Statutes § 53a-46a,[3] permits a person convicted of a capital

---

[3] "[General Statutes] Sec. 53a-46a. HEARING ON IMPOSITION OF DEATH PENALTY. AGGRAVATING AND MITIGATING FACTORS. (a) A person shall be subjected to the penalty of death for a capital felony only if a hearing is held in accordance with the provisions of this section.

"(b) For the purpose of determining the sentence to be imposed when a defendant is convicted of or pleads guilty to a capital felony, the judge or judges who presided at the trial or before whom the guilty plea was entered shall conduct a separate hearing to determine the existence of any mitigating factor concerning the defendant's character, background and

felony to be sentenced to death if the state proves the existence of an aggravating factor beyond a reasonable doubt and the defendant fails to prove the existence of a mitigating factor by a preponderance

history, or the nature and circumstances of the crime, including any mitigating factor set forth in subsection (g), and any aggravating factor set forth in subsection (h). Such hearing shall not be held if the state stipulates that none of the aggravating factors set forth in subsection (h) of this section exists or that one or more mitigating factors exist. Such hearing shall be conducted (1) before the jury which determined the defendant's guilt, or (2) before a jury impaneled for the purpose of such hearing if (A) the defendant was convicted upon a plea of guilty; (B) the defendant was convicted after a trial before three judges as provided in subsection (b) of section 53a-45; or (C) if the jury which determined the defendant's guilt has been discharged by the court for good cause or, (3) before the court, on motion of the defendant and with the approval of the court and the consent of the state.

"(c) In such hearing the court shall disclose to the defendant or his counsel all material contained in any presentence report which may have been prepared. No presentence information withheld from the defendant shall be considered in determining the existence of any mitigating or aggravating factor. Any information relevant to any mitigating factor may be presented by either the state or the defendant, regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters, but the admissibility of information relevant to any of the aggravating factors set forth in subsection (h) shall be governed by the rules governing the admission of evidence in such trials. The state and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any mitigating or aggravating factor. The burden of establishing any of the factors set forth in subsection (h) shall be on the state. The burden of establishing any mitigating factor shall be on the defendant.

"(d) In determining whether a mitigating factor exists concerning the defendant's character, background or history, or the nature and circumstances of the crime, pursuant to subsection (b) of this section, the jury or, if there is no jury, the court shall first determine whether a particular factor concerning the defendant's character, background or history, or the nature and circumstances of the crime, has been established by the evidence, and shall determine further whether that factor is mitigating in nature, considering all the facts and circumstances of the case. Mitigating factors are such as do not constitute a defense or excuse for the capital felony of which the defendant has been convicted, but which, in fairness and mercy, may be considered as tending either to extenuate or reduce

of the evidence. General Statutes § 53a-46a (g) and (h); *State* v. *Daniels,* 207 Conn. 374, 384–85, 542 A.2d 306 (1988) (*Daniels I*). Because "the death penalty is exacted with great infrequency even for the most

the degree of his culpability or blame for the offense or to otherwise constitute a basis for a sentence less than death.

"(e) The jury or, if there is no jury, the court shall return a special verdict setting forth its findings as to the existence of any aggravating or mitigating factor.

"(f) If the jury or, if there is no jury, the court finds that one or more of the factors set forth in subsection (h) exist and that no mitigating factor exists, the court shall sentence the defendant to death. If the jury or, if there is no jury, the court finds that none of the factors set forth in subsection (h) exists or that one or more mitigating factors exist, the court shall impose a sentence of life imprisonment without the possibility of release.

"(g) The court shall not impose the sentence of death on the defendant if the jury or, if there is no jury, the court finds by a special verdict, as provided in subsection (e), that any mitigating factor exists. The mitigating factors to be considered concerning the defendant shall include, but are not limited to, the following: That at the time of the offense (1) he was under the age of eighteen or (2) his mental capacity was significantly impaired or his ability to conform his conduct to the requirements of law was significantly impaired but not so impaired in either case as to constitute a defense to prosecution or (3) he was under unusual and substantial duress, although not such duress as to constitute a defense to prosecution or (4) he was criminally liable under sections 53a-8, 53a-9 and 53a-10 for the offense, which was committed by another, but his participation in such offense was relatively minor, although not so minor as to constitute a defense to prosecution or (5) he could not reasonably have foreseen that his conduct in the course of commission of the offense of which he was convicted would cause, or would create a grave risk of causing, death to another person.

"(h) If no mitigating factor is present, the court shall impose the sentence of death on the defendant if the jury or, if there is no jury, the court finds by a special verdict as provided in subsection (e) that (1) the defendant committed the offense during the commission or attempted commission of, or during the immediate flight from the commission or attempted commission of, a felony and he had previously been convicted of the same felony; or (2) the defendant committed the offense after having been convicted of two or more state offenses or two or more federal offenses or of one or more state offenses and one or more federal offenses for each of which a penalty of more than one year imprisonment may be imposed, which offenses were committed on different occasions and which involved the infliction of serious bodily injury upon another person; or (3) the defendant committed the offense and in such commission knowingly created a grave risk of death to another person in addition to the victim of the offense;

atrocious crimes [there must be a] meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." *Furman* v. *Georgia,* 408 U.S. 238, 313, 92 S. Ct. 2726, 33 L. Ed. 2d 346, reh. denied sub nom. *Jackson* v. *Georgia,* 409 U.S. 902, 93 S. Ct. 89, 34 L. Ed. 2d 164 (1972) (White, J., concurring).[4] Our statute reflects the effort of our legislature to distinguish the most culpable of homicides from all other homicides.

The United States Supreme Court has held that "if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion.' " *Godfrey* v. *Georgia,* 446 U.S. 420, 428, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980). Thus, "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious

---

or (4) the defendant committed the offense in an especially heinous, cruel or depraved manner; or (5) the defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value; or (6) the defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value."

[4] In *Furman* v. *Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), the United States Supreme Court decided 5-4 to vacate death sentences imposed upon the three petitioners. Because each Justice wrote his own opinion, courts most often cite the concurring opinions decided on the narrowest grounds, those of Justices Stewart and White. See R. Rosen, "The 'Especially Heinous' Aggravating Circumstance in Capital Cases— The Standardless Standard," 64 N.C.L. Rev. 941, 948 n.40 (1986). In voting to vacate the judgments, Justice Stewart concluded that "the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed." *Furman* v. *Georgia,* supra, 310 (Stewart, J., concurring).

action." *Gregg* v. *Georgia,* 428 U.S. 153, 189, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (opinion of Stewart, Powell and Stevens, Js.). Of special importance to this case, a state must avoid defining aggravating factors in an open-ended, subjective manner that would allow the trier unfettered discretion in levying a death sentence and thus create a substantial risk that the trier will inflict punishment arbitrarily or capriciously. *California* v. *Brown,* 479 U.S. 538, 541, 107 S. Ct. 837, 93 L. Ed. 2d 934 (1987).[5] A capital sentencing "system could have standards so vague that they would fail adequately to channel the sentencing decision patterns of [triers] with the result that a pattern of arbitrary and capricious sentencing . . . could occur." *Gregg* v. *Georgia,* supra, 195 n.46.[6] Therefore, "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reason-

[5] In *Gregg* v. *Georgia,* 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976), three justices opined that a bifurcated procedure, in which the trier does not consider the defendant's sentence until it has determined his guilt, is another way of avoiding potential constitutional infirmities. Id., 190–92 (opinion of Stewart, Powell and Stevens, Js.). Connecticut has adopted such a bifurcated procedure. General Statutes § 53a-46a.

[6] "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk. . . . Claims of vagueness directed at aggravating circumstances defined in capital punishment statutes are analyzed under the Eighth Amendment and characteristically assert that the challenged provision fails adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion . . . held invalid in *Furman* v. *Georgia* [408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972)] . . . ." *Maynard* v. *Cartwright,* 486 U.S. 356, 361–62, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988). As in *Maynard,* the more stringent eighth amendment principles control this case, except to the extent that due process principles further enlighten our analysis. See *Kolender* v. *Lawson,* 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983) (recognizing the more important aspect of the vagueness doctrine as not actual notice, but the requirement that the legislature establish minimal guidelines to govern law enforcement); see also *State* v. *Schriver,* 207 Conn. 456, 460, 542 A.2d 686 (1988); M. Radin, "Cruel Punishment and Respect for Persons: Super Due Process for Death," 53 S. Cal. L. Rev. 1143 (1980).

ably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant* v. *Stephens,* 462 U.S. 862, 877, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983).

Most of the aggravating factors contained in Connecticut's death penalty statute direct the trier to make a definite, objective finding. See General Statutes § 53a-46a (h) (1), (2), (5) and (6). Section 53a-46a (h) (4), however, contains an arguably subjective standard, that "the defendant committed the offense in an especially . . . cruel . . . manner." Two United States Supreme Court decisions are particularly instructive on the constitutional validity of this criterion as a basis for imposition of the death penalty.

In *Godfrey* v. *Georgia,* supra, a jury convicted the petitioner of two counts of murder and one count of aggravated assault. At the sentencing hearing, the trial court charged the jury that it could impose a death sentence if it found beyond a reasonable doubt that the offense was "outrageously or wantonly vile, horrible and inhuman," the aggravating factor promulgated by the Georgia legislature. The United States Supreme Court held this factor unconstitutionally vague under *Gregg* v. *Georgia,* supra, explaining that the jury had sentenced the petitioner to death "based upon no more than a finding that the offense was 'outrageously or wantonly vile, horrible and inhuman.' There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' " *Godfrey* v. *Georgia,* supra, 428–29.[7]

[7] Justice Stewart wrote the plurality opinion in which Justices Blackmun, Powell and Stevens joined. Justice Marshall, joined by Justice Brennan, concurred separately, but agreed that the standard was unconstitutionally vague. *Godfrey* v. *Georgia,* 446 U.S. 420, 435, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980).

In *Maynard* v. *Cartwright,* 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988), an Oklahoma jury sentenced the petitioner to death based in part upon a finding that he had committed murder in an "especially heinous, atrocious, or cruel" manner. The trial court had not limited, in any fashion, the jury's construction of this aggravating factor. A unanimous court relied on *Godfrey* to hold that "the language of the Oklahoma aggravating circumstance at issue . . . gave no more guidance than the 'outrageously or wantonly vile, horrible or inhuman' language that the jury returned in its verdict in *Godfrey*." Id., 363–64. The court therefore struck the aggravating factor as facially vague and remanded the case to allow the Oklahoma court the opportunity to define the statutory aggravating factor with sufficient precision to satisfy constitutional standards.[8]

As we have recently noted, *Godfrey* and *Maynard* raise serious questions about the constitutional validity of § 53a-46a (h) (4). See *State* v. *Daniels,* 209 Conn. 225, 228–29 n.1, 550 A.2d 885 (1988) (*Daniels II*). On its face, there is no apparent distinction between our statutory reference to the commission of the offense "in an especially . . . cruel . . . manner" and the Oklahoma statute that *Maynard* struck down. Indeed, the trial court in this case granted the defendant's motion to dismiss the aggravating factor precisely on this ground. The state does not take issue with the trial court's ruling insofar as it concluded that, without more, the "especially cruel" aggravating factor cannot withstand a vagueness challenge. We agree.

*Godfrey* and *Maynard,* however, contain an important caveat. In each case, the United States Supreme Court alluded to an absence of jury instructions that

---

[8] The United States Supreme Court has continued to apply eighth amendment principles strictly. See, e.g., *South Carolina* v. *Gathers,*     U.S.    , 109 S. Ct. 2207, 104 L. Ed. 2d 876 (1989).

might have limited the ambit of a statutory term that was otherwise unconstitutionally vague.[9] More pointedly, the court in *Maynard* stated that it did "not hold that some kind of torture or serious physical abuse is the only limiting construction of the heinous, atrocious, or cruel aggravating circumstance that would be constitutionally acceptable." *Maynard* v. *Cartwright,* supra, 365. By implication, certain limiting constructions of the aggravating circumstance *would* correct the constitutional infirmity.

This observation in *Maynard* is entirely consistent with the United States Supreme Court's earlier decision in *Proffitt* v. *Florida,* 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913, reh. denied, 429 U.S. 875, 97 S. Ct. 197, 50 L. Ed. 2d 158 (1976). In *Proffitt* the petitioner attacked on vagueness grounds the state's enumerated aggravating factor: "[The capital felony was] 'especially heinous, atrocious, or cruel.' " The court held that "[t]hese provisions must be considered as they have been construed by the Supreme Court of Florida." Id., 255. The Florida Supreme Court had held that the "provision [was] directed only at 'the conscienceless or pitiless crime which is unnecessarily torturous to the victim.' " Id., quoting *State* v. *Dixon,* 283 So. 2d 1, 9 (Fla. 1973). Thus, the United States Supreme Court concluded that it could not "say that the provision, as

---

[9] In *Godfrey* v. *Georgia,* 446 U.S. 420, 428–29, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980), the plurality stated: "A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' Such a view may, in fact, have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions." The plurality also noted that the Georgia courts in that case had not limited the jury's construction of the aggravating factor to certain limited criteria as they had in earlier cases. Id., 431–32. In *Maynard* v. *Cartwright,* 486 U.S. 356, 359–60, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988), the court noted the Tenth Circuit Court of Appeals' conclusion that the Oklahoma courts had not adopted a limiting construction that cured the vagueness of the aggravating factor.

so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases." *Proffitt* v. *Florida,* supra, 256; see also *Gregg* v. *Georgia,* supra, 201 (arguably any murder involves depravity of mind, but "there is no reason to assume that the Supreme Court of Georgia will adopt such an open-ended construction").

Thus, it is apparent that the term "especially cruel," while unconstitutionally vague standing alone, can be limited and construed so as to pass constitutional muster.[10] The dispositive question therefore becomes who should undertake to provide a limiting construction of "in an especially cruel manner." The defendant argues that neither this court nor the trial court should engage in any further definition of the term because that task falls within the legislature's domain. The state maintains that we have an independent responsibility for statutory construction that it is our duty to exercise. We agree with the state.

The defendant is correct in his assertion that the power to define crimes and to designate the penalties therefor resides in the legislature. *State* v. *Ellis,* 197 Conn. 436, 455–56, 497 A.2d 974 (1985). Courts must avoid imposing criminal liability where the legislature

---

[10] Indeed the majority of jurisdictions confronting vagueness claims since the announcement of *Maynard* v. *Cartwright,* 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988), have held that properly drawn constructions of otherwise vague terms can save the terms from constitutional infirmity. See, e.g., *State* v. *McCall,* 160 Ariz. 119, 125, 770 P.2d 1165 (1989); *State* v. *Vickers,* 159 Ariz. 532, 544, 768 P.2d 1177 (1989); *State* v. *Tassin,* 536 So. 2d 402, 411–12 (La. 1988); *Minnick* v. *State,* 551 So. 2d 77, 97 (Miss. 1988); *Pinkney* v. *State,* 538 So. 2d 329, 357 (Miss. 1988); *Clemons* v. *State,* 535 So. 2d 1354, 1364 (Miss. 1988); *Lanier* v. *State,* 533 So. 2d 473, 491 (Miss. 1988); *Jones* v. *State,* 767 S.W.2d 41, 45 (Mo. 1989); *State* v. *Smith,* 756 S.W.2d 493, 501 (Mo. 1988); *State* v. *Griffin,* 756 S.W.2d 475, 490 (Mo. en banc 1988); *State* v. *Fullwood,* 323 N.C. 371, 400, 373 S.E.2d 518 (1988); *State* v. *Thompson,* 768 S.W.2d 239, 252 (Tenn. 1989); *State* v. *Hines,* 758 S.W.2d 515, 521 (Tenn. 1988); but see *Wilson* v. *State,* 295 Ark. 682, 687–90, 751 S.W.2d 734 (1988).

has not expressly so intended. *State* v. *Grullon,* 212 Conn. 195, 200, 562 A.2d 481 (1989); *State* v. *Hufford,* 205 Conn. 386, 392, 533 A.2d 866 (1987). Thus, we construe penal statutes strictly in favor of the accused. *State* v. *Whiteman,* 204 Conn. 98, 101, 526 A.2d 869 (1987); *State* v. *Edwards,* 201 Conn. 125, 132, 513 A.2d 669 (1986). This construction is all the more compelling where, as here, the defendant's life is at stake. *State* v. *McGann,* 199 Conn. 163, 177, 506 A.2d 109 (1986).

The party attacking a validly enacted statute, however, bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality. *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 212 Conn. 83, 100, 561 A.2d 917 (1989); *Zapata* v. *Burns,* 207 Conn. 496, 507–508, 542 A.2d 700 (1988); *State* v. *Hernandez,* 204 Conn. 377, 385, 528 A.2d 794 (1987). In choosing between two constructions of a statute, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. See *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* supra, 96; *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 706, 553 A.2d 596 (1989); *Bishop* v. *Kelly,* 206 Conn. 608, 617, 539 A.2d 108 (1988); *French* v. *Amalgamated Local Union 376,* 203 Conn. 624, 636–37, 526 A.2d 861 (1987); see also *Lublin* v. *Brown,* 168 Conn. 212, 219–20, 362 A.2d 769 (1975). We undertake this search for a constitutionally valid construction when confronted with criminal statutes as well as with civil statutes. *State* v. *Snook,* 210 Conn. 244, 251, 555 A.2d 390 (1989); *State* v. *Champagne,* 206 Conn. 421, 437, 538 A.2d 193 (1988).

Conjoining these various canons of statutory construction, we conclude that we must, if possible, put

a judicial gloss upon the term "especially cruel" that adopts a definition that saves this term from its facial vagueness and yet construes it as narrowly as possible in the defendant's favor. Both the state and the defendant admit to the availability of such a core construction, although the defendant counsels us against its adoption.

Both parties agree that if "especially cruel" has any meaning in the capital felony context, that meaning must include the intentional infliction of extreme pain or torture above and beyond that necessarily accompanying the underlying killing. We agree. We hereby adopt this definition of "especially cruel" as an acceptable core construction of § 53a-46a (h) (4). This construction comports with, and indeed is somewhat narrower than, the common definition of "cruel"[11]: "[D]isposed to inflict pain . . . in a wanton, insensate, or vindictive manner . . . . " Webster's Third New International Dictionary.[12] Further, we can infer from *Proffitt, Godfrey* and *Maynard,* that such an objective judicial gloss protects the term "especially cruel" from attack on vagueness grounds. While the parties may disagree over how *broadly* the term "especially cruel" may be construed, "we rewrite nothing in the language of the statute" by assigning to it a *limited* core con-

---

[11] The word "especially" offers no constitutional assistance in further defining the term "cruel." The court explained in *Maynard* v. *Cartwright,* 486 U.S. 356, 364, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988), with regard to the aggravating factor "especially heinous": "The State's contention that the addition of the word 'especially' somehow guides the jury's discretion, even if the term 'heinous' does not, is untenable. To say that something is 'especially heinous' merely suggests that the individual jurors should determine that the murder is more than just 'heinous,' whatever that means, and an ordinary person could honestly believe that every unjustified, intentional taking of human life is 'especially heinous.'

[12] "Cruelty" is defined as the "intentional and malicious infliction of physical or mental suffering upon living creatures . . . or . . . the wanton, malicious, and unnecessary infliction of pain upon the body . . . . " Black's Law Dictionary (5th Ed. 1979).

struction.[13] *State* v. *Snook,* supra, 251. Our construction of "especially cruel" rests on our perception that the legislature, in enacting § 53a-46a (h) (4), meant to impose the death penalty at least in those cases in which the trier has found that the defendant intentionally inflicted extreme pain or torture upon the victim, above and beyond the pain necessarily accompanying the victim's death.

It bears mentioning what we have not decided in this case. First, we have not decided whether the death penalty, per se or as applied, violates any provision of our state constitution. While the defendant asks us to interpret our own constitution to provide relief beyond that afforded to him by the federal constitution, we agree with the trial court that he has not advanced any concrete arguments for a separate state constitutional treatment of this issue. *State* v. *Herring,* 210 Conn. 78, 98 n.19, 554 A.2d 686 (1989); *State* v. *Mercer,* 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988). Second, we have not determined what standard of review will govern any future appeal of the defendant's conviction or death sentence, should one be imposed, except with regard to the core construction of the aggravating factor "especially cruel." See General Statutes § 53a-46b. Finally, because we construe the term "especially cruel" as narrowly as possible in the defendant's favor, we have not considered to what extent the legislature may constitutionally broaden the definition of the term "especially cruel."

---

[13] Our characterization of this judicial gloss as a "core construction" does not rest upon due process notions of fair notice. See *State* v. *Schriver,* 207 Conn. 456, 463, 542 A.2d 686 (1988); *State* v. *Pickering,* 180 Conn. 54, 65, 428 A.2d 322 (1980). Rather, our construction aims to comply with the eighth amendment by distinguishing the few cases in which the death penalty is imposed from the many in which it is not. *Furman* v. *Georgia,* 408 U.S. 238, 313, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972) (White, J., concurring).

There is error and the case is remanded to the trial court to proceed with the sentencing hearing in a manner consistent with this opinion.

In this opinion SHEA, CALLAHAN, COVELLO, HULL and SANTANIELLO, Js., concurred.

GLASS, J., dissenting. Because the sentence of death is irreversible, I believe that the legislature should set clear and constitutional standards for its imposition. And since the phrase "especially cruel" in General Statutes § 53a-46a (h) (4) is standardless, I respectfully dissent.

I

There is no question that the phrase "especially cruel" in General Statutes § 53a-46a (h) (4) is constitutionally "insufficient to cure the jury's unchanneled discretion" in deciding whether to vote for death. *Maynard* v. *Cartwright,* 486 U.S. 356, 363, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988); see *Zant* v. *Stephens,* 462 U.S. 862, 877, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983); *Furman* v. *Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346, reh. denied sub nom. *Jackson* v. *Georgia,* 409 U.S. 902, 93 S. Ct. 89, 34 L. Ed. 2d 164 (1972). Further, it also seems undeniable that the concept of "especially cruel" may include instances of "the intentional infliction of extreme pain or torture [upon the victim] above and beyond that necessarily accompanying the underlying killing." The initial issue presented by this case, however, is whether the court should adopt any narrowing construction. In my opinion, it should not.

"This court should ' "try, whenever possible, to construe statutes to avoid a constitutional infirmity," ' but may not do so by rewriting the statute or by eschewing its plain language. *Seals* v. *Hickey,* 186 Conn. 337, 346, 441 A.2d 604 (1982)." *State* v. *Snook,* 210 Conn.

244, 251, 555 A.2d 390 (1989). The word "construe" means "[t]o put together; to arrange or marshal the words of an instrument. To ascertain the meaning of language by a process of arrangement and inference." Black's Law Dictionary (5th Ed.). I do not believe that the word "construe," or the canon of statutory construction mentioned in *State* v. *Snook,* can be "construed" to mean a conscious process of eliminating all that part of a word's meaning that is constitutionally offensive, or plucking out of a word's meaning a concrete example that arguably does not offend the constitution. "To construe" does not mean "to redact." As the majority acknowledges, "especially cruel" is overbroad under the eighth amendment. If it genuinely were to "construe" that term, it would discover what it already knows: that "especially cruel" connotes "too many things," that "cruel" includes "too much."

I am unpersuaded by the majority's attempt to support its decision to "put a judicial gloss upon the term 'especially cruel' " by reference to United States Supreme Court cases holding that an unconstitutionally imprecise statutory aggravating factor may be saved if that factor is appropriately limited by judicial decision. See, e.g., *Proffitt* v. *Florida,* 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913, reh. denied, 429 U.S. 875, 97 S. Ct. 197, 50 L. Ed. 2d 158 (1976). The present issue cannot turn on the fact that the words "especially cruel" are subject to a limiting definition. There are few words in the English language that are not. Nor can the issue be resolved by recognizing that the courts of other states, when dealing with the legislative history of their own statutes, have decided to limit the scope of the term "especially cruel" or "especially heinous" according to the standards of statutory construction that prevail in those jurisdictions. See, e.g., *State* v. *Dixon,* 283 So. 2d 1, 9 (Fla. 1973). The issue is whether this court, dealing with Connecticut law,

should so limit the term. The majority relies on no legislative history surrounding the passage of the death penalty statute. Because there is no legislative history shedding light on what the General Assembly precisely intended by the term "especially cruel," I would defer to the legislature to supply a narrowing definition. Further, as I already have indicated, the purpose of statutory "construction" is to ascertain what the legislature meant, not to edit its chosen language to something palatable.

Moreover, I am persuaded that, given the public significance of the issue in this case, this court must defer to the legislature to produce a constitutionally adequate definition of the concept of "especially cruel." The General Assembly is the voice of the voters of this state. I do not believe that it is this court's responsibility to speculate on the legislature's intent in order to fit capital felony aggravating factors into an arguably constitutional template. Again, I acknowledge that "especially cruel" may well include physical torture "above and beyond that necessarily accompanying the underlying killing." But the term most assuredly embraces a spectrum of other subconcepts. Because of the manifest public importance of this issue, the people's representatives should have the exclusive right to establish the aggravating conduct that shall subject an offender to death, *and* the exclusive onus of fashioning constitutionally adequate limitations on its definition of that conduct.

This court has not seen fit to undertake review of our present death penalty statute under the Connecticut constitution. Under the eighth amendment, it is the General Assembly—and not this court—that ultimately decides whether there shall be any death penalty in Connecticut. *Gregg* v. *Georgia,* 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (death penalty not unconstitutional per se). In this most heated of public issues,

an issue clearly ranging well beyond law and involving fundamental moral and philosophical choices; see generally S. Nathanson, An Eye for an Eye (1987); this court of law's task should be a narrow one: to say what the eighth amendment permits, and what it does not permit. This court should not, however, take upon itself the burden of specifying the precise variety of conduct that may give rise to a capital sentence. That decision is a political decision best left to politicians.

## II

If I were persuaded that this court should narrow the definition of unconstitutionally overbroad or vague aggravating factors, the issue would become whether this court's construction of the phrase "especially cruel" is sufficiently precise to bring it within the contours of constitutional clarity. I am convinced, however, that the majority's "construction" of this term will " 'fail adequately to channel the sentencing decision patterns of [triers] with the result that a pattern of arbitrary and capricious sentencing . . . could occur.' " Majority quoting *Gregg* v. *Georgia,* supra, 195 n.46.

As noted above, the majority opinion establishes the standard of "especially cruel" as "the intentional infliction of extreme pain or torture above and beyond that necessarily accompanying the underlying killing." I first note that there are at least three reasonable interpretations of this standard. First, a *narrow* interpretation would render it totally meaningless. "[P]ain or torture . . . necessarily accompanying the underlying killing" literally would include all pain or torture the victim experienced during the transaction resulting in his death, since that which he experienced during the transaction would "necessarily accompany" his death. There therefore could not be any pain or torture "above and beyond" that which accompanied death. Consequently, the aggravating factor of "especially cruel" never would apply.

Because the majority purports to allow for the implementation of "especially cruel," however, one must infer that the court contemplates a *causal* relationship between the "pain or torture" and "the underlying killing." Only if there existed a necessary causal relationship between the "pain" or "torture" and the underlying death could there be any pain or torture "above and beyond" the underlying death. Unfortunately, the choice of terms "pain" and "torture" is confusing at best, and renders uncertain the focus of the causality relationship. "Pain" is "a basic bodily sensation induced by a noxious stimulus . . . characterized by physical discomfort." Webster's New Collegiate Dictionary. It is not the "noxious stimulus" itself. Thus, in common understanding, "pain" is not a "cause" of death, and therefore not "necessary" to death, except perhaps in cases of trauma induced by pain. Thus, if the causal relationship lies between "pain" and "the underlying killing" or death, the aggravating factor of "especially cruel" would apply only in those limited instances in which the victim dies precisely as a result of the trauma associated with pain, *and* the perpetrator has inflicted additional pain or torture. Of course, the aggravating factor would also apply if the defendant intentionally inflicted *"torture* above and beyond that necessarily accompanying the underlying killing." This statement contemplates a second narrow category of cases in which the cause of the underlying killing is "torture" (assuming that "torture," and not a specific injury inflicted during the "torture," causes the death), *and* the defendant has inflicted additional pain or torture.

Under this second reasonable interpretation of the majority opinion, a defendant *would not* be subject to the death penalty under either category if he tortured the victim at length, and then caused the victim's death by gunshot or knifewound, since the underlying kill-

ing will not have been caused by "pain" or "torture." The defendant *would* be subject to the death penalty, however, if it could be established that it was the "pain" or "torture" attendant to the gunshot or knifewound that caused the underlying killing, and not the specific injury itself, and he inflicted additional pain or torture. I think it patently unreasonable to suggest, however, that a sentencing judge or jury, even with the guidance of medical expertise, could ever segregate with any certainty the pain or torture necessary to cause the underlying killing from any additional pain or torture.

A third interpretation, the one that I *suspect* the majority intends, is that "especially cruel" means the "intentional infliction of extreme pain or torture above and beyond" the pain or torture necessarily associated with the *injury* that causes death. Such an interpretation, of course, is necessarily broader than either of the first two reasonable interpretations of the court's language. Consequently, if this interpretation is correct, then the court cannot say that it has construed "especially cruel" as "narrowly as possible in the defendant's favor."

Further, in my view, the standard so interpreted would remain unreasonably imprecise. The requirement that the defendant's infliction of gratuitous pain or torture be "intentional" is dangerously open-ended, offering a sentencing court or jury no guidance at all. For example, it is unclear whether the defendant must be aware that the "pain or torture" he inflicts is "above and beyond" that necessarily accompanying the underlying killing. Assuming that the defendant must know that his actions are not necessary, however, the court does not suggest whether the sentencer's inquiry should focus on the defendant's subjective knowledge of that which necessarily accompanies the killing, or whether the defendant could be "charged" with that knowledge by a consideration of what a reasonable person would

comprehend under the circumstances. Further, the opinion fails to address the precise mens rea requirement; that is, whether the additional infliction of pain or torture must be done with an intent only to cause pain, or with an intent to bring about death or grievous bodily harm. Similarly, the court does not disclose whether the sentencer's inquiry should focus on the victim's subjective experience of "extreme pain," an objective standard, or a combination of the two. There is of course no way to measure or quantify a victim's subjective experience of pain. As an example of the confusion that may arise from the lack of guidance on this point, one wonders whether the "especially cruel" factor applies where, at the time of the incident, the victim is less sensitive to "noxious stimuli" as a result of voluntary or involuntary intoxication, and therefore subjectively experiences substantially less pain than a sober person would experience in the same circumstances.

If one considers precisely what is at stake in this case, it must be conceded that I am not being fastidious in voicing these concerns. These issues, in my view, must be addressed and resolved if we are to avoid the creation of "standards so vague that they would fail adequately to channel the sentencing decision *patterns* of [triers] with the result that a pattern of arbitrary and capricious sentencing . . . could occur." (Emphasis added.) *Gregg* v. *Georgia,* supra, 195 n.46. For all the above reasons, however, instead of clarifying "especially cruel," the majority has only succeeded in ensuring additional confusion for the capital felony sentencer.

### III

Even if the court's "construction" of "especially cruel" was sufficiently precise, its sole focus on that term in the present case is inappropriate. The state originally asserted the entire aggravating factor of

§ 53a-46a (h) (4): that is, that the crimes were committed in an "especially heinous, cruel or depraved manner." It thereafter amended its notice to limit the factor to "especially cruel." The court limits its attention to that term.

The court's focus is problematic in a number of ways. First, it is clear that by the use of the word "or," the legislature intended the separate terms in subsection (h) (4) to apply in the alternative. There is a presumption that every word of a statute has meaning. *Berger* v. *Tonker,* 192 Conn. 581, 589, 473 A.2d 782 (1984). Thus, if "especially cruel" means the gratuitous infliction of extreme pain, then "especially heinous" and "especially depraved" mean something else. If not, those latter terms would be redundant, a "construction" clearly undermined by the statute's alternative syntax. Upon reflection, the problem this poses is obvious: the conceptual stretch of those latter terms, in conjunction with the now theoretically narrowed meaning of "especially cruel," would place no functional or practical limitation on a capital sentencer's discretion. *Maynard* v. *Cartwright,* supra, 362–63.

It is true that "especially cruel" is the only "aggravating factor" asserted by the state in the present case. Thus, one might suppose that the impact of the other terms in the statute, either applied separately or collectively, should be assessed when that case is before us. The state's selection of the term "especially cruel" is itself arbitrary, however, since it must be acknowledged that any one of those terms—cruel, heinous, or depraved—easily could be "construed" to mean "the intentional infliction of extreme pain or torture above and beyond that necessarily accompanying the underlying killing." In selecting one term, the state obviously has sought to avoid the more indefensible vagueness challenge that would be presented by a prosecution involving all three terms, without sacrificing the "core

construction" it could have wrung out of any one of those terms. I do not believe that the admittedly unconstitutional sweep of subsection (h) (4) should be subject to rehabilitation by "construction" as a result of the state's stratagem.

The most unfortunate aspect of today's decision, however, lies not in the quality of the narrowing standard the court has adopted, nor in its adherence to the state's arbitrary restriction of the issue to the term "especially cruel." Even if the court's narrowing standard of "especially cruel" is sufficiently precise under *Furman*, the *process* by which this standard has been established in this case is itself an arbitrary process. At the time of Breton's alleged crimes, and at the time the state charged, tried and convicted him of the two murder counts, the term "especially cruel" meant "especially cruel"—no more, and no less—and thus was unconstitutional. See *Maynard* v. *Cartwright*, supra, 363–64 (holding that terms "especially heinous, atrocious, or cruel" indistinguishable from unconstitutionally imprecise terms of "outrageously or wantonly vile, horrible and inhuman" struck down in 1980 in *Godfrey* v. *Georgia*, 446 U.S. 420, 428, 100 S. Ct. 1759, 64 L. Ed. 2d 398 [1980]). Suddenly, however, well after the crimes and after the predicate capital felony convictions, that unconstitutional term has become constitutional by dint of the court's unguided speculation into the legislature's intent.

Further, Breton is now subject to death by electrocution even though the facts surrounding the aggravating nature of the homicides have yet to be presented to a capital sentencing court or jury. Thus, this court has no idea of the facts of this case. I must assume that the state's explication of "especially cruel"—or whatever term it had picked from subsection (h) (4), for that matter—corresponds with its knowledge of the as yet unlitigated facts concerning the aggravated nature of

the crimes. In accepting one of the state's alternative narrowing constructions, therefore, the court has, in essence, enabled the state to create the law to apply to the facts. I cannot imagine a more arbitrary process.

As a final matter, I must profess disappointment with the majority's summary dismissal of the defendant's claim that the trial court's decision could be affirmed on state constitutional grounds. Cf. *State* v. *Stoddard,* 206 Conn. 157, 163, 537 A.2d 446 (1988) (holding that state constitution requires police to inform custodial suspect of attorney's attempts to contact him, contrary to scope of fifth amendment rights under *Moran* v. *Burbine,* 475 U.S. 412, 106 S. Ct. 1135, 89 L. Ed. 2d 410 [1986]). I have serious doubts as to the viability of a death penalty standard that only provides that the sentencer's "discretion must be suitably directed and limited so as to *minimize* the risk of *wholly* arbitrary and capricious action." (Emphasis added.) *Godfrey* v. *Georgia,* supra, 427. The present eighth amendment standard reflects a judgment that the federal constitution tolerates a certain amount of capriciousness in the application of the death penalty. I am unwilling to assume, without any reason for doing so, that the Connecticut constitution also approves of such a process.

Accordingly, because the phrase "especially cruel" is constitutionally inadequate; *Maynard* v. *Cartwright,* supra; I would find no error in the trial court's decision dismissing the capital felony prosecution.