[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court by way of remand from the Supreme Court for the limited purpose of allowing the defendant the opportunity to challenge his execution by lethal injection as cruel and unusual punishment under the state constitution. Statev. Webb, 238 Conn. 389, 488-489 (1996).
At the remand hearing the defense called to the stand persons who either participated in the task force assigned by the Commissioner of Correction to establish a procedure for carrying out the imposition of death by lethal injection, or were anticipated participants in the procedure itself. They included: Peter Matos, Deputy Commissioner of Correction, who was responsible for heading the task force which ultimately articulated the protocol for implementing the imposition of death by lethal injection Administrative Directive 6.15 (Def. Exh. A); Jack Tokozn, Deputy Commissioner of Correction, also a participant in the task force; Dr. Bret Rayford, a psychologist assigned the task of profiling and screening corrections employees to be participants in the procedure; Thomas MaCura, a pharmacist and consultant to the task force responsible, most notably, for the array of chemicals to be used and the manner of their introduction into the body; and Dr. Edward Blanchette, a CT Page 8396 medical doctor employed by the Department of Correction, and an anticipated participant responsible for the certification of death and performance of those duties assigned to a licensed and practicing physician as per the administrative directive.
Additionally, the defense offered a transcription of the testimony of Dr. Edward Brunner from a prior hearing involving the same issue, where Dr. Brunner attested to the risks attendant to a procedure for implementing an execution by lethal injection; the potential for pain associated with those risks; and the failure of Administrative Directive 6.15 to specifically address those risks.
The state called Dr. Jeffrey Gross, an anesthesiologist, who attested to the lack of pain associated with the proper implementation of the written procedure; the safeguards included in the procedure; and the minimal skill and training actually necessary to carry out the procedure.
This court has previously determined that both the state and federal constitutional prohibitions against cruel and unusual punishment in the context of the implementation of the death penalty, basically prohibit procedures that cause the unnecessary and wanton infliction of pain, torture, or lingering death. Greggv. Georgia, 428 U.S. 153, 173 (1976); Francis v. Resweber,329 U.S. 459, 463-64 (1947). In re Kemmler, 136 U.S. 436, 447
(1890). See State v. Breton, Superior Court, judicial district of Waterbury, Docket No. CR4-147941 (November 14, 1997). The burden of proof on the defendant with respect to this issue is proof beyond a reasonable doubt since a validly enacted statute carries with it a strong presumption of constitutionality. State v.Breton, 212 Conn. 258, 269 (1989).
At the conclusion of the evidence, in its argument to the court and in its subsequent brief, the defense abandoned any claim that proper implementation of the Administrative Directive 6.15 would constitute cruel and unusual punishment under the state constitution or result in anything other than a virtually painless death. The defense, instead, shifted its focus to several new due process claims seemingly unrelated to the purpose of the hearing held pursuant to the order of remand. In remanding this matter back to the trial court our Supreme Court agreed "to allow the defendant to challenge his execution by lethal injection as cruel and unusual punishment under the stateconstitution." (Emphasis added.) State v. Webb, supra, 488. CT Page 8397 However, since our state constitution contains no specific prohibition against cruel and unusual punishment any interpretation of the constitution to include such a prohibition would necessarily be based on due process guarantees. State v.Ross, 230 Conn. 183, 246 (1994). To the extent our Supreme Court finds defendant's due process claims sufficiently related to the original issue for which this matter was remanded, this court will address them briefly.
The first such claim raised in argument is that this court should conclude from the evidence that the notion of using or incorporating medical procedures for the purpose of killing inmates is so abhorrent and shocking to the conscience of the court as to constitute a violation of substantive due process. The defense in its examination of witnesses attached special significance to the question of whether to characterize as a medical procedure" the intravenous technique for introducing into the body the three agents that cause death; a characterization clearly not favored by the medical experts associated with the state. Using a "medical procedure" to kill, the defense argues, is precisely the notion this court should find so abhorrent as to conclude it violates due process.
Though raised in argument this claim was abandoned in defendant's brief. Accordingly, this court would simply note that whether termed a "medical procedure' or a procedure originally designed and developed for medical purposes, based on the evidence before this court, death by the intravenous induction of the lethal agents remains, for the most part, a humane manner of imposing death and certainly does not aggravate or heighten any concerns this court might have about the death penalty.
In fact, the employment of tested procedures used in connection with the practice of medicine is perfectly consistent with the purpose behind the imposition of death by lethal injection; that is, to impose death upon the inmate in as humane a manner as possible.
The second contention of the defense raised in argument and the subject of defendant's brief is that Section 54-100 of the General Statutes is unconstitutionally vague on its face in that it provides no notice to the inmate as to the specific procedures for implementation of death by lethal injection nor any opportunity to mount a challenge to the method. The defense argues that since any resulting implementation policy, such as Administrative Directive 6.15, is not binding as a matter of law but, rather, subject to change at the whim of the Commissioner of CT Page 8398 Correction, any effort by the defendant to mount a challenge is akin to "shooting at a moving target" or "phantom." The state's failure to adopt administrative regulations or to specify by statute the means and manner of death, the defendant argues, leaves him without the ability to launch a challenge.
As the state notes in its brief the defendant offers no authority for the proposition that Administrative Directive 6.15 should have been adopted as a regulation via the Uniform Administrative Procedure Act or that it even fits the definition of a regulation under the act. Additionally there is no authority for the proposition that the legislature was constitutionally required to provide the defendant with any detailed form of notice with respect to the method of execution when it established that certain crimes are punishable by death. In fact, the substantial case law cited by the state is to the contrary. (See state's response brief, p. 3-5).
In support of its vagueness and lack of notice argument the defendant cites numerous cases pertaining to statutes defining criminal conduct and the constitutional necessity that they be sufficiently definite to convey the appropriate warnings to the public when measured by common sense standards and practices. He then suggests that they be applied with equal vigor to a statute dealing with the method of inflicting the death penalty. The state responds that notions of fair notice have no applicability to "procedures in force to prosecute the crime or impose the sentence." (State's response brief, p. 6) Clearly, in terms of adequacy of notice, statutes proscribing conduct and those imposing penalties do not fall into the same category. "The degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depends in part on the nature of the enactment . . ." (Citations omitted; internal quotation marks omitted.) State v. Indrisano,228 Conn. 795, 803 (1994). Legislative acts imposing periods of incarceration, for instance, need not set out in detail what that incarceration would entail in terms of housing, food, exercise, etc., since there is a presumption that they will be carried out in a fashion consistent with standards of decency and not violative of prohibitions against cruel and unusual punishment.State v. Floyd, 217 Conn. 73, 79 (1991). The proper focus of a due process claim with respect to the method of imposing the death penalty is the prohibition against cruel and unusual punishment and, in this regard, the defense has failed to satisfy its burden of proving the statute unconstitutional beyond a CT Page 8399 reasonable doubt.
Defendant's final claim, that 54-100 of the General Statutes violates the state's separation of powers doctrine, is so far beyond the scope of the remand and unrelated to the purpose for the hearing held in furtherance of the remand, that this court declines to address the issue, and leaves this matter for the consideration of our Supreme Court if it deems such consideration appropriate.
For the foregoing reasons, the defendant's challenge to the state's method of execution under the state constitution is denied.
FASANO, J.