## STATE OF CONNECTICUT *v.* JOHN M. LEARY ET AL.
### (14051)

PETERS, C. J., SHEA, COVELLO, HULL and BORDEN, Js.

Argued October 30, 1990—decision released February 12, 1991

*Barry N. Silver,* with whom, on the brief, was *Alan E. Silver,* for the appellants (defendants).

*Neil G. Fishman,* assistant attorney general, with whom was *Robert M. Langer,* assistant attorney general, for the appellee (plaintiff).

HULL, J. This appeal involves an action by the plaintiff, the state of Connecticut, alleging that the defendants, John M. Leary and Tickets Today, Inc., had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The trial court determined that the defendants had violated General Statutes § 42-110b (a)[1] by selling admission tickets to various entertainment events in violation of General Statutes § 53-289,[2] and granted the plaintiff's request for injunctive relief, restitution and a civil penalty. We affirm.

The following facts are undisputed. On July 2, 1986, at the request of the commissioner of consumer protection (commissioner), the attorney general applied to

[1] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[2] General Statutes § 53-289 provides: "No person shall sell, offer for sale or attempt to sell any ticket, privilege or license of admission to an entertainment event, including, but not limited to, any place of amusement, arena, stadium, theater, performance, sport, exhibition or athletic contest given in this state, at a price greater than the price, including tax, printed thereon, or at a price greater than the price fixed for admission, including tax, and a reasonable service charge for services actually rendered not to exceed three dollars. The owner or operator of the property on which such entertainment event is to be held or is being held may authorize, in writing, any person to sell such ticket, privilege or license of admission at a price in excess of that authorized under this section. Such writing shall specify the price for which such ticket, privilege or license of admission is to be sold. Any person violating any provision of this section shall be guilty of ticket scalping. Ticket scalping is a class C misdemeanor for a first offense, a class A misdemeanor for a second offense and a class D felony for any subsequent offense. The sale of each ticket, privilege or license of admission in violation of any provision of this section shall constitute a separate offense."

the Superior Court on behalf of the plaintiff, pursuant to General Statutes § 42-110m,[3] for an order: (1) permanently enjoining the defendants from violating § 53-289 by selling admission tickets to various entertainment events at prices in excess of three dollars over their face value; (2) directing the defendants to pay restitution to consumers injured as a result of such sales; and (3) directing the defendants to pay a civil penalty to the plaintiff pursuant to General Statutes § 42-110o (b).[4] On October 26, 1986, the trial court enjoined the defendants from further noncompliance with § 53-289 until further order of the court.

Having previously filed a joint statement of material facts not in dispute, the plaintiff and the defendants filed cross motions for summary judgment. In support of their motion, the defendants claimed that: (1) the plaintiff's action was improperly commenced; (2) the additional charges levied by the defendants in the sale of tickets were delivery charges which are not prohibited by § 53-289; and (3) § 53-289 violates the equal protection provisions of the federal and state constitutions.

---

[3] General Statutes § 42-110m provides in pertinent part: "(a) Whenever the commissioner has reason to believe that any person has been engaged or is engaged in an alleged violation of any provision of this chapter said commissioner may proceed as provided in section 42-110d and section 42-110e or may request the attorney general to apply in the name of the state of Connecticut to the superior court for [an] order temporarily or permanently restraining and enjoining the continuance of such act or acts or for an order directing restitution and the appointment of a receiver in appropriate instances, or both. . . ."

[4] General Statutes § 42-110o (b) provides: "In any action brought under section 42-110m, if the court finds that a person is wilfully using or has wilfully used a method, act or practice prohibited by section 42-110b, the attorney general, upon petition to the court, may recover, on behalf of the state, a civil penalty of not more than two thousand dollars for each violation. For purposes of this subsection, a wilful violation occurs when the party committing the violation knew or should have known that his conduct was a violation of section 42-110b."

The trial court denied the cross motions for summary judgment, stating that because "§ 53-289 . . . does not prohibit a delivery charge in excess of three dollars if [the] same is reasonable and substantiated by the facts," there was a genuine issue as to a material fact, specifically, whether the excess charges levied by the defendants were truly delivery charges as asserted, or service charges in violation of § 53-289. Thereafter, a hearing was held on the issues presented by the cross motions for summary judgment.

The trial court found that the excess charges to consumers "were not based on the cost of delivery, that being mailing costs or mileage to make the delivery, but were based on the quality of the ticket in terms of location, desirability of the seat and costs for procurement of [the] same. . . . Based on the evidence presented, the defendants' delivery charge is a sham and a subterfuge for the scalping of tickets in violation of Section 53-289 of the Connecticut General Statutes." The court also determined that the action had been commenced properly pursuant to General Statutes §§ 3-125[5] and 42-110m. Nevertheless, the court denied the cross motions for summary judgment a second time, because it could not resolve the defendants' equal protection claim without further evidence.

---

[5] General Statutes § 3-125 provides in pertinent part: "The attorney general shall have general supervision over all legal matters in which the state is an interested party, except those legal matters over which prosecuting officers have direction. He shall appear for the state, the governor, the lieutenant governor, the secretary, the treasurer and the comptroller, and for all heads of departments and state boards, commissioners, agents, inspectors, committees, auditors, chemists, directors, harbor masters, high sheriffs or their chief deputies . . . and institutions and for the state librarian in all suits and other civil proceedings . . . and for all members of the state house of representatives and the state senate in all suits and all other civil proceedings brought against them involving their official acts . . . . All legal services required by such officers and boards in matters relating to their official duties shall be performed by the attorney general or under his direction."

Thereafter, following a hearing on the equal protection issue, the trial court determined that since the purpose of § 53-289 was legitimate and the statute was designed to accomplish that purpose in a fair and reasonable way, the defendants had failed to sustain their burden of establishing their claim of unconstitutionality. Accordingly, the court granted the plaintiff's motion for summary judgment and denied the cross motion of the defendants. Following a hearing in damages, the trial court granted the plaintiff's request for permanent injunctive relief and ordered the defendants to pay restitution to injured consumers and a civil penalty to the plaintiff.

The defendants appealed the judgment to the Appellate Court. We subsequently transferred the appeal to this court pursuant to Practice Book § 4023.

The defendants claim that: (1) § 53-289 violates the equal protection provisions of the federal and state constitutions; (2) the trial court's finding that the additional charges levied by the defendants were prohibited by § 53-289 was erroneous and in violation of the defendants' rights to due process of law; (3) the plaintiff commenced the action against the defendants improperly and, therefore, it is invalid; and (4) § 42-110b (a) of CUTPA is unconstitutionally vague and overbroad.

I

The defendants' first claim is that § 53-289 violates the equal protection provisions of the federal and state constitutions.[6] According to the defendants, because

---

[6] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." The defendants also rely on the Connecticut constitution, article first, § 1, which provides: "[A]ll men when they form a social compact, are equal in rights; and no man, or set of men are entitled to exclusive public emoluments or privileges from the community."

§ 53-289 permits the owners of property on which entertainment events are held to authorize any person to sell tickets at a price greater than that generally permitted under the section, the section grants benefits to a select group of individuals in violation of the defendants' rights to equal protection of the laws. We do not agree.

" ' "The equal protection provisions of the federal and state constitutions have the same meaning and limitations." ' *Daily* v. *New Britain Machine Co.,* [200 Conn. 562, 577, 512 A.2d 893 (1986)]; see also *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982); *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 343 (1979); *Miller* v. *Heffernan,* 173 Conn. 506, 516–17, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978)." *Ecker* v. *West Hartford,* 205 Conn. 219, 237, 530 A.2d 1056 (1987). " 'In the case of economic regulation, the test to determine constitutionality is well established in our cases. . . .' " *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 26, 523 A.2d 467 (1987). " '[A]n act regulating economic activity must bear a reasonable relationship to a proper legislative purpose in a manner that is neither arbitrary nor discriminatory. *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754 (1940). "The court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional [requirement] of . . . equal protection." *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). . . .' " *Blue Sky Bar, Inc.* v. *Stratford,* supra, 26–27.

"The party attacking [the constitutionality of] a validly enacted statute . . . bears the heavy burden

of proving its unconstitutionality beyond a reasonable doubt . . . ." *State* v. *Breton,* 212 Conn. 258, 269, 562 A.2d 1060 (1989); *Zapata* v. *Burns,* 207 Conn. 496, 507–508, 542 A.2d 700 (1988). We will indulge in every presumption in favor of the statute's constitutionality; *State* v. *Breton,* supra; and, when called upon to interpret a statute, "we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." Id.; *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 705–706, 553 A.2d 596 (1989). These principles of statutory construction apply equally to criminal and to civil statutes. *State* v. *Breton,* supra.

Section 53-289 provides in pertinent part: "No person shall sell, offer for sale or attempt to sell any ticket, privilege or license of admission to an entertainment event, including, but not limited to, any place of amusement, arena, stadium, theater, performance, sport, exhibition or athletic contest given in this state, at a price greater than the price, including tax, printed thereon, or at a price greater than the price fixed for admission, including tax, and a reasonable service charge for services actually rendered not to exceed three dollars. The owner or operator of the property on which such entertainment event is to be held or is being held may authorize, in writing, any person to sell such ticket, privilege or license of admission at a price in excess of that authorized under this section. Such writing shall specify the price for which such ticket, privilege or license of admission is to be sold. Any person violating any provision of this section shall be guilty of ticket scalping."

The trial court determined that "[t]he legislative history of section 53-289 indicates that the statute was enacted for the purpose of (1) promoting equal and fair access to public events; (2) protecting the public from

outrageous tickets prices; and (3) preventing the loss of proceeds realized by ticket scalpers which are denied the performing artists, the local economy and major civic centers." See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1983 Sess., p. 1441. The defendants do not challenge the legitimacy of this purpose. Rather, they claim that § 53-289 fails to advance this purpose, and further, that the exemption that it creates for owners and their licensees, contravenes the statute's purpose by effectively legalizing ticket scalping and creating a monopoly on the sale of tickets.

"The legislature, cognizant of the constitutional guarantees of equal protection, must be deemed to have sought to attain a rational and sensible result that avoids placing [the] statute in constitutional jeopardy. *Peck* v. *Jacquemin,* 196 Conn. 53, 63–64, 491 A.2d 1043 (1985); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981)." *State* v. *Jenkins,* 198 Conn. 671, 679, 504 A.2d 1053 (1986). It would be unreasonable to infer, as the defendants suggest, that the General Assembly enacted § 53-289 in order to protect the public from the ill effects caused by ticket scalping, but at the same time, believed there was any real possibility that owners of property where entertainment events are held would be likely to engage in or to authorize ticket scalping. "We must reject [this] interpretation . . . that would have the statute operate in a way that is 'difficult and possibly bizarre.' *State* v. *Blasko,* [202 Conn. 541, 558–59, 522 A.2d 753 (1987)]; *Maciejewski* v. *West Hartford,* 194 Conn. 139, 152, 480 A.2d 519 (1984)." *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 593, 522 A.2d 771 (1987). A more reasonable interpretation is that the legislature concluded that since an owner is free to enter into contractual relations regarding the price of tickets for his own pecuniary benefit, the exemption was appropriate, and that owners would not authorize others to sell tickets at an

unreasonable markup, because they could have charged virtually any price at the outset. Moreover, in the rare event that an owner should greatly underprice his tickets in relation to the demand and later attempt to make an additional profit by authorizing a grossly excessive markup, it is likely that such a practice would have harmful repercussions on further patronage of the establishment that would discourage its repetition.

The legislature could reasonably have relied on market forces that affect owners of entertainment facilities differently from fly-by-night ticket scalpers in deciding to regulate only the markup charged by the latter. The legislative history of § 53-289 contains no reference to excessive markups by owners or their authorized ticket agents, while it is replete with instances of ticket scalping by others.[7] It is not a violation of the principle of equal protection for a statute to address only those concerns for which a need of regulation has been demonstrated. See *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 135, 479 A.2d 231 (1984). We conclude, therefore, that the defendants have not met their burden of establishing that § 53-289 bears no rational relationship to a legitimate objective, in violation of the equal protection provisions of the federal and state constitutions.

## II

The defendants' second claim is that because delivery charges are excluded from the prohibition of § 53-289, and "there was no factual dispute that the additional charges added to the price of a ticket by the [defendants] was a delivery charge based upon costs incurred by them in procuring and placing those tickets

---

[7] See remarks of Senator Howard T. Owens, Jr., regarding ticket scalping, 26 S. Proc., Pt. 8, 1983 Sess., pp. 2747–49, and Pt. 14, pp. 4971–73; testimony of Attorney General Joseph I. Lieberman, Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1983 Sess., pp. 1495–1505.

in the buyer's hand," the trial court's conclusion that the defendants violated § 53-289 was erroneous and in violation of their rights to due process of law. This claim is without merit.

Contrary to the defendants' assertion, there was a factual dispute as to whether the additional charges were "delivery charges." The joint statement of material facts not in dispute states that "[t]*he defendants have characterized* this additional cost [over face value of the tickets] as a 'delivery' charge." (Emphasis added.) Moreover, the trial court expressly predicated its denial of the cross motions for summary judgment on its conclusion that the question "[w]hether or not the additional costs were a delivery charge or simply a service charge in excess of three dollars . . . in violation of Section 53-289 . . . is a question of fact which cannot be decided by a Motion for Summary Judgment."

The trial court found that the additional charges by the defendants were not based on the cost of delivery, such as mailing costs or mileage, but rather, were costs based on the quality of the ticket, in terms of the location and desirability of the seat it represented, and the costs for procuring that seat. The defendants did not challenge this evidentiary finding in the trial court. "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 4185. We, therefore, decline to address this claim further.

III

The defendants' third claim is that the action against them was invalid because it was commenced improperly pursuant to General Statutes § 42-110m. According to the defendants, because the instant action was initiated by the commissioner at the suggestion of the

attorney general rather than as a result of consumer complaints, the commissioner did not have reason to believe that the defendants had been engaged in an alleged violation of CUTPA and lacked any grounds to bring the action. We do not agree.

Section 42-110m (a) provides in pertinent part: "Whenever the commissioner has reason to believe that any person has been engaged or is engaged in an alleged violation of any provision of this chapter said commissioner may proceed as provided in section 42-110d and section 42-110e or may request the attorney general to apply in the name of the state of Connecticut to the superior court for [an] order temporarily or permanently restraining and enjoining the continuance of such act or acts or for an order directing restitution and the appointment of a receiver in appropriate instances, or both."

It is undisputed that the investigation by the commission of consumer protection (commission) into the sales activities of the defendants was in response to the attorney general's suggestion to the commission that such an investigation might be prudent. Moreover, at the time that the action was commenced under § 42-110m, no consumer complaints had been filed concerning the defendants. Nonetheless, during one of the hearings on the cross motions for summary judgment, an investigator for the commission testified that prior to the commencement of the action, he had submitted a report to the commissioner stating that: (1) he had spoken with the defendant Leary regarding ticket sales by the defendants, and Leary had stated that the fact that he was charging what he referred to as a delivery charge was not in violation of § 53-289 as he understood the law; (2) Leary had also stated that many others were doing the same thing; (3) subsequent to the conversation with Leary, the investigator had received, by mail, an unsigned, typewritten list identifying ten

companies, including the defendant Tickets Today, Inc.; and (4) on the basis of his investigation, the investigator believed that Leary had sent the list to him, and that there was an industry wide practice of selling tickets in excess of three dollars over face value in violation of § 53-289.

The defendants have brought forth no authority for their assertion that the commissioner's belief under § 42-110m must derive from consumer complaints rather than from a recommendation by the attorney general. The language of § 42-110m sets forth no such requirement, and " ' "[i]t is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words . . . ." ' (Citations omitted.) *Mozzochi* v. *Glastonbury,* 188 Conn. 276, 279, 449 A.2d 173 (1982)." *State* v. *Whiteman,* 204 Conn. 98, 103, 526 A.2d 869 (1987).

Furthermore, the defendants have failed to establish their claim that "no facts existed prior to the bringing of this action to support a belief that the [defendants] were engaged in any 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' " Both the recommendation of the attorney general and the report of the commission's investigator were received by the commission prior to the commencement of the action. The defendants have not shown that this evidence was insufficient to sustain the commissioner's belief that the defendants had been or were engaged in an alleged violation of CUTPA. We conclude, therefore, that the trial court reasonably determined that there was a sufficient factual foundation to warrant the commissioner's action pursuant to § 42-110m.

IV

The defendants' final claim is that § 42-110b of CUTPA is unconstitutionally vague and overbroad. We are unpersuaded.

## A

The defendants failed to raise their void for vagueness claim in the trial court. Because they claim that their constitutional rights to due process of law are involved, the defendants presumably seek review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"It is the appellant's responsibility to provide this court with a record adequate to review his claim of error. *State* v. *Anderson,* 209 Conn. 622, 633, 553 A.2d 589 (1989); *State* v. *Crumpton,* 202 Conn. 224, 231, 520 A.2d 226 (1987). This the defendant[s] [have] failed to do." *State* v. *Carpenter,* 214 Conn. 77, 86, 570 A.2d 203 (1990).

"As a matter of the due process of law required by our federal and state constitutions, 'a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid.' *State* v. *Pickering,* 180 Conn. 54, 59–60, 428 A.2d 322 (1980); *Buckley* v. *Valeo,* [424 U.S. 1, 77, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976)]; *United States* v. *Harriss,* 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954); *State* v. *Eason,* 192 Conn.

37, 46, 470 A.2d 688 (1984) [overruled on other grounds, *Paulsen* v. *Manson,* 203 Conn. 484, 491, 525 A.2d 1315 (1987)]. The void for vagueness doctrine 'requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." ' *Smith* v. *Goguen,* 415 U.S. 566, 572–73, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974)." *State* v. *Proto,* 203 Conn. 682, 696, 526 A.2d 1297 (1987).

"[I]n non-first amendment contexts, 'the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue.' *State* v. *Pickering,* supra, 57; *United States* v. *Powell,* 423 U.S. 87, 92, 96 S. Ct. 316, 46 L. Ed. 2d 228 (1975); *United States* v. *Harriss,* supra." *State* v. *Proto,* supra, 696–97. On the basis of the undeveloped record in this case, it is impossible to determine whether the defendants were sufficiently made aware of what conduct they had to avoid. Due to the inadequate record, therefore, we decline to review this claim on appeal. *State* v. *Golding,* supra, 240.

## B

The defendants claim that since § 42-110b might be interpreted by a person of ordinary intelligence to prohibit forms of speech that are in fact, constitutionally protected, it is unconstitutionally overbroad on its face. The defendants failed to raise their claim of overbreadth in the trial court, but in light of our disposition, we need not address whether the claim is reviewable under *State* v. *Evans,* supra, pursuant to which we presume the defendants seek review.

Under the doctrine of overbreadth "a person may challenge a statute that infringes protected speech even if the statute constitutionally might be applied to him."

*Ohralik* v. *Ohio State Bar Assn.,* 436 U.S. 447, 462 n.20, 98 S. Ct. 1912, 56 L. Ed. 2d 444, reh. denied, 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198 (1978); see 3 R. Rotunda, J. Nowak & J. Young, Constitutional Law Substance and Procedure § 20.8, p. 24; compare *United States* v. *Raines,* 362 U.S. 17, 21, 80 S. Ct. 519, 4 L. Ed. 2d 524 (1960) (in non-first amendment contexts, "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional"). Nevertheless, because " 'the justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context . . .' "; *Ohralik* v. *Ohio State Bar Assn.,* supra, quoting *Bates* v. *State Bar of Arizona,* 433 U.S. 350, 380, 97 S. Ct. 2691, 53 L. Ed. 2d 810, reh. denied, 434 U.S. 881, 98 S. Ct. 242, 54 L. Ed. 2d 164 (1977); "decisions dealing with more traditional First Amendment problems do not extend automatically to this as yet uncharted area [commercial speech]. See, e.g., [*Ohralik* v. *Ohio State Bar Assn.,* supra, 462 n.20] (overbreadth analysis not applicable to commercial speech)." *Friedman* v. *Rogers,* 440 U.S. 1, 11 n.9, 99 S. Ct. 887, 59 L. Ed. 2d 100, reh. denied, 441 U.S. 917, 99 S. Ct. 2018, 60 L. Ed. 2d 389 (1979); see 3 R. Rotunda, J. Nowak & J. Young, supra, § 20.8, pp. 29–30. Section 42-110b regulates "acts or practices in the conduct of any trade or commerce." We conclude, therefore, that the overbreadth doctrine does not apply in this case.

The judgment is affirmed.

In this opinion the other justices concurred.