[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS TO STRIKE
The instant motions to strike present numerous questions concerning the relationship between the Connecticut Products Liability Act, Conn. Gen. Stat. 52-572m, et seq. and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110, et seq. Many of these questions have arisen with relative frequency in the CT Page 8128 superior courts of the State of Connecticut, but for the most part the questions have not reached the appellate level. The superior courts appear widely divided in the reported decisions.
I. Statement of Facts
The plaintiff, Nancy Touchette, brought this action against the defendants, Gary Smith and Dots, Inc., d/b/a Northeast Rental and Sales, seeking recovery for damages in connection with the death of the plaintiff's decedent. The plaintiff claims that on April 17, 1990, her decedent rented an easy rooter for use in cleaning a sewer pipe behind his home in Preston. The plaintiff alleges that while the decedent was using the easy rooter he sustained an electrical shock which caused him to suffer a heart attack and die.
II. The Complaint
The plaintiff's revised complaint is pled in four counts. The first count alleges liability under the Connecticut Product Liability Act, Conn. Gen. Stat. 52-572m, et seq. (CPLA). Her second count purports to state a claim of action for damages under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110, et seq. (CUTPA), by incorporating the twelve paragraphs of the first count by reference and including a thirteenth paragraph concluding that the defendants' actions constituted an unfair trade practice. The third count seeks damages for loss of consortium as a result of the products liability claim. The fourth count is a count for recklessness.
The first count which is a pure statutory products liability claim under 52-572m, and the fourth count, which is a count for recklessness, have not been challenged in this motion to strike.
III. Basis of Defendants' Motion to Strike
The defendant challenges the CUTPA count on three distinct grounds. First, the defendant claims that the product liability statute is the exclusive remedy for a defective product and that no other action may be brought at least when the fact patterns are functionally equivalent. Second, the defendant claims that in the instant case the plaintiff is attempting to use CUTPA to recover for a wrongful death claim and that any action for wrongful death relating to a penal statute abates upon death and does not survive to be prosecuted by the personal representative. Third, the CT Page 8129 defendant claims that the plaintiffs' CUTPA claim is for a recovery for personal injuries and/or death and that these are not the type of ascertainable damages which are recoverable under CUTPA.
With regard to the third count, the plaintiff has alleged a claim for loss of consortium tied to the products liability claim. The defendant argues that loss of consortium is a derivative action not available under a statutory products liability claim.
IV. Decision of the Court
The court is aware, particularly with regard to the second count, that if it strikes on any basis, it is required to identify the basis upon which the motion to strike was granted. The court is equally aware that if it strikes on one ground it may be unnecessary to rule on the remaining grounds for the motion to strike.
Nevertheless, it is very clear that the entire area concerning the relationship between the CPLA and CUTPA is unclear in Connecticut. Each side has done a thoroughly professional job of citing what authority and argument exist in support of its respective positions. Eventually it will be necessary for these issues to be resolved by the Appellate and/or Supreme Court of Connecticut. Given the confusion in this area of the law, together with the importance of the principles involved, the court believes it is appropriate to rule on each of the defendants' claims.
First, it is the holding of the court that the second count should be stricken because CUTPA is a penal statute and, as such, a claim for wrongful death does not survive. Second, while the court recognizes that the Products Liability Act is exclusive for some purposes, the court does not strike the second count in the instant case because of the exclusive remedy argument. Third, the court does not strike the second count in the instant case because of the agreement that the damages requested are for personal injury and/or death.
Finally, the court does strike the third count. It is the holding of the court that damages for loss of consortium are not authorized under the products liability statute and any type of claim for common law loss of consortium would run afoul of the exclusive nature of the products liability statute.
V. Discussion CT Page 8130
Exclusive nature of products liability remedy —
Section 52-572n provides:
 A product liability claim as provided in Secs. 52-240a, 52-240b, 52-572m-572r inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against the products sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." [Emphasis added]
Section 42-110g provides in pertinent part:
 Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by Sec. 42-110b may bring an action in the judicial district in which the plaintiff or defendant resides . . . ." [Emphasis added]
The fact that the exclusive remedy for damage done by the defective product is the Products Liability Act has been settled in Connecticut in the Winslow v. Louis-Shepard, Inc., 212 Conn. 462
(1989). Winslow was essentially concerned with the relationship between a statutory products liability claim and the earlier forms of common law claims. While the court is aware that there are superior court decisions which appear to go in either direction on the instant issue, it appears to this court that the Products Liability Act and the Unfair Trade Practices Act are designed to remedy different wrongs. As the legislative history of the Products Liability Act reflected in Winslow at page 469 shows:
 The bill is based on a Department of Commerce draft in the area of product liability . . . . At the present time as you know, if you bring an action for a defective product, it frequently brought based upon [warranty,] based upon negligence and based upon strict liability . . . . [The bill provides for] a single cause of action. It eliminates the complex pleading which we presently have involving, as I said, [warranty] and strict liability and CT Page 8131 negligence.
Winslow at 469, 470.
The legislative intention in enacting the Unfair Trade Practices Act may be gleaned from a quote in Hinchliffe v. American Motors Corp., 184 Conn. 607 (1981), in which the Supreme Court held:
 "Against this background, the legislature enacted CUTPA, announcing that `[i]t is the intention of the legislature that this chapter be remedial and be so construed'. General Statute 42-110b(d). The act is aimed at eliminating or discouraging `unfair methods of' competition and unfair or deceptive acts or practices."
Hinchcliffe at 616, 617.
The court goes on to hold:
 "The plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under attorney's fees; General Statutes 42-110g(d); and punitive damages; General Statutes 42-110g(a); enhances the private CUTPA remedy and serves to encourage private CUTPA litigation. The legislative history, a sample of which appears in footnote 5, supra, demonstrates that CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts. To interpret CUTPA narrowly, perhaps on the ground that a victimized consumer has other, less complete remedies available to him, effectively negates this legislative intent.
Hinchcliffe, at 6127, 618.
Reduced to its simplest terms, the court holds that the purpose of the Products Liability Act is to prevent the sale of defective products. The purpose of the Unfair Trade Practices Act is to prevent unfair or deceptive trade practices. Faced with the CT Page 8132 apparent legislative intent and the Supreme Court analysis in Winslow, it is the court's holding that the acts have similar but distinctly different purposes. While the court recognizes that, in virtually every products liability case a count in unfair trade practices is likely to be pled, the court is not prepared to abrogate the apparent legislative intent by ruling that the remedies are mutually exclusive.
Survival of Wrongful Death Claim
At common law no action in tort survived the death of the tort claimant. Flynn v. New York, New Haven Hartford Rail Company,111 Conn. 196, 201, aff'd. 283 U.S. 53 1930); Gorke v. LeClerc,23 Conn. Sup. 256. In 1949 the legislature sought to ameliorate this perhaps harsh result when it enacted 52-599 of the Connecticut General Statutes. The statute commonly known as the survival of action statute provides:
 "A cause of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person . . . The provisions of this section shall not apply . . . to any civil action upon a penal statute." [Emphasis supplied]
If the Connecticut Unfair Trade Practices Act is properly classified as a "penal statute" then the syllogistic reasoning would appear to be inescapable that the action for wrongful death for Ms. Touchette's decedent does not survive his death. In State v. Leary, 217 Conn. 404 (1991) our Supreme Court appears to have answered the question of whether CUTPA is a penal statute. In that case the Court held:
 "As a matter of due process of law required by our federal and state constitutions, `a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid.'" [Citations omitted]
Leary at 416.
Leary was a case which dealt with an attempt to bring actions proscribing ticket scalping under 42-110b. The defendant Leary claimed that the cited section was unconstitutionally vague and CT Page 8133 overly broad. In response to that claim the Supreme Court agreed that a penal statute could not be overly vague and broad. This court acknowledges the possibility that the Appellate or Supreme Court might find that while the Unfair Trade Practice Act is a penal statute for purposes of constitutional review, it is not a penal statute for purposes of the survival of actions statute. Nevertheless, the trial court cannot escape the inevitable logic that the words "penal statute" are used both in the survival of action statute (C.G.S. 52-599) and in the Leary opinion at page 416. Faced with this, the court holds that any action under the unfair Trade Practices Act abates as at common law and is not saved by the survival of action statute because of the specific exclusion from that statute of penal statutes.
VI. Recovery for Personal Injury
The court declines to strike the second count of the plaintiff's complaint because it seeks compensation for personal injury. Undoubtedly if the plaintiff is allowed to proceed with the second count she would make a claim for money damages such as funeral expenses, and perhaps other liquidated amounts. The nature of damages recoverable under CUTPA may limit the type of damages that could be recovered under such a count and may lead to the need for specific instructions limiting certain types of general damages ordinarily recoverable in a wrongful death case. These matters would appear to be matters concerning the proper measure of damages at the time of trial and to fall short of justification for striking the count on that basis.
VII. Count Three — Loss of Consortium
Finally, the court comes to the question of Count Three, Loss of Consortium. It is the opinion of the court that this count should be stricken. In this regard the court relies heavily on the Memorandum of Decision by Judge Mary Hennessey in Ina Golub v. Chrysler Corporation, et al., Judicial District of Hartford/New Britain, October 22, 1992, and the Memorandum of Decision of Judge Pickett in Curt Fabische, et al. v. Geze Sports Products, Inc., et al, Judicial District of Litchfield, March 1, 1993.
The court is aware of no Appellate or Supreme Court case law which directly addresses the issue of whether a loss of consortium claim may be asserted by a spouse in an action brought against product sellers under the Products Liability Act. However, the Supreme Court has disallowed a loss of consortium claim related to CT Page 8134 a nuisance or negligence highway defect claim in Sanzone v. Board of Police Commissioners, 219 Conn. 179 (1991). Likewise, the Appellate Court has blocked a derivative loss of consortium claim tied to a workers' compensation claim in Wesson v. Milford, 5 Conn. App. 369
(1985).
It appears fair and equitable to the court to find that the language of the Products Liability Statute indicates no intent on the part of the legislature to include a loss of consortium claim by the spouse of the person injured by a defective product within the purview of the statutory products liability cause of action. This court finds, as did Judge Hennessey, that "personal injury" connotes physical or emotional injury suffered by a person directly injured by a defective product, not losses sustained by a spouse resulting from the other spouse's "personal injury" and thus only derivative of the injured spouse's products liability claim. Likewise, the court agrees with judge Pickett's holding in Fabische at page 8 of the memo in which he concluded
 "Therefore, a loss of consortium claim brought by a spouse of a person injured by a defective product is not permitted to sue under the product liability act. Accordingly, the defendant, Geze Sports Products, Inc.'s motion to strike the third count of the complaint is granted."
Reardon Nazzaro for plaintiff.
Halloran Sage for defendants.